DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Gest Farms and Dean Gest appeal the order of the Lorain County Common Pleas Court, Domestic Relations Division, granting a divorce to plaintiff Rosa Gest. We affirm in part and reverse in part.
Dean and Rosa Gest were married on January 10, 1976. In 1993, Rosa filed a complaint for divorce, seeking custody of the couple's three minor children, and seeking spousal support, child support, and an equitable division of property. Dean counter-complained for legal separation. The trial court granted Rosa's motion to join as a party Gest Farms, a dairy farm partnership in which Dean and his brother Russell each have a 50% interest.
Following trial, the court granted a final decree of divorce and ordered Dean to pay to Rosa cash equal to: (1) one-half of Dean's interest in four parcels of real estate, (2) one-half of Dean's interest in Gest Farms, and (3) one half of Dean's interest in machinery, equipment, and livestock used in the operation of Gest Farms.
The court designated Rosa as residential parent and legal custodian of the three minor children and ordered Dean: (1) to pay $727 per month in child support; (2) to provide health insurance for the children; (3) to pay Rosa spousal support in the amount of $600 per month; and (4) to pay Rosa's legal fees in the amount of $15,400.
Dean moved for a new trial, raising issues as to the valuation and distribution of property, spousal support, and attorney fees. The court denied the motion.
Gest Farms has appealed, asserting two assignments of error. Dean has appealed, asserting three assignments of error.
 I.
In its first assignment of error, Gest Farms maintains that the trial court erred by joining it as a party to the divorce action.
Rosa moved the trial court to join Gest Farms as a party to the divorce action pursuant to Civ.R. 75(B)(1), arguing: (1) that Gest Farms exerted control and had an interest in property that was a subject of the divorce action, including certain real estate and partnership assets; and (2) that Rosa was seeking an equitable division of Dean's interest in the partnership. On the day the motion was filed, the complaint and motion were personally served upon Gest Farms.
One week later, the trial court held a hearing to consider several pending motions by the parties, including the motion for joinder. The transcript of that hearing was not made a part of the record provided to this court. The record discloses only that following the hearing the trial court granted Rosa's motion to join Gest Farms as a party, after which Rosa filed an amended complaint naming Gest Farms as a party defendant.
Gest Farms states in its brief that it contested Rosa's motion to join it as a party. It cites nothing in the record to support its contention that it objected to joinder, and our review of the record discloses no motions in opposition to joinder.
Generally, alleged errors which arise during the course of civil proceedings and are not brought to the attention of the trial court by objection, or otherwise, at the time they could be remedied are waived and may not be reviewed on appeal. Lefort v.Century 21 — Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123. App.R. 16(A)(3) requires an appellant to cite the court to the place in the record where each alleged error is reflected. It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error. Slyder v.Slyder (Dec. 29, 1993), Summit App. No. 16224, unreported, at 3.
Since Gest Farms failed to identify anything in the record to substantiate that it preserved the joinder issue for appeal, it has waived its right to assert this issue as error. We note, however, that as to divorce actions, Civ.R. 75(B)(1) permits the joinder of any person or entity "having possession of, control of, or claiming an interest in property, whether real, personal, or mixed, out of which another seeks an award of spousal support or other support[.]" In such instances, joinder is within the sound discretion of the trial court. Huener v. Huener (1996),110 Ohio App.3d 322, 327. Since the real and personal property used in Gest Farms' operations, and Dean's partnership interest in and income from Gest Farms, were all at issue in determining Dean's support obligations pursuant to the divorce, the trial court did not abuse its discretion in joining Gest Farms as a party.
Gest Farms' first assignment of error is overruled.
 II. A.
At trial, Gest Farms presented expert testimony as to the value of Gest Farms. As a result of this testimony, the trial court determined that the value of Gest Farms at the date of marriage "without regard to its equipment or real estate," was $264,050 and that the value of Gest Farms at the date of trial was $441,138. The court concluded that $88,544, representing 50 percent of the $177,088 appreciation in Gest Farms from 1976 to 1994 was a marital asset. It awarded Rosa $44,272, representing Rosa's share of Dean's one-half interest in Gest Farms.
Rosa presented expert testimony at trial as to the fair market value of machinery, equipment, and livestock owned by Gest Farms and used in its operations. The trial court accepted Rosa's expert's valuations and determined that: (1) 50 percent of the $248,000 value of the machinery and equipment, or $124,000, was a marital asset in which Dean and Rosa were entitled to share equally; and (2) the livestock owned by Gest Farms had appreciated $52,924 in value during the marriage and 50 percent of that value, or $26,462, was a marital asset in which Dean and Rosa were to share equally.
In Gest Farms' second assignment of error and in sub-part "A" of Dean's first assignment of error, appellants argue that the trial court's valuation of Gest Farms was not supported by the evidence and was unreasonable, arbitrary, unconscionable, and an abuse of discretion. Appellants maintain: (1) that the trial court erred in concluding that the value of Gest Farms, as determined by its expert, was "without regard to its equipment or real estate"; and (2) that its valuation of the business as a going concern necessarily assumed the utilization of its machinery, equipment, and livestock to produce income. They maintain that by adopting both Gest Farms' $441,138 valuation of the partnership using the capitalized income method and Rosa's $332,524 fair market valuation of the machinery, equipment, and livestock used in the business, the court effectively combined two independent valuations of the same business instead of selecting
between the two.[1]
 B.
Gest Farms' expert, John Gorsek, a C.P.A., testified that he had calculated the fair market value of Gest Farms by using the capitalization of earnings method of valuation. In determining the value of the business at the date of divorce, Gorsek studied the cash flows and the net income from farming operations for 1994, 1993, and 1992, as reflected in the partnership's tax returns. After determining the cash flow and net income of the operation, he then applied a capitalization rate of 8 percent to arrive at a capitalized current value of Gest Farms of $441,138. Gorsek then performed the same method of analysis for 1974, 1975, and 1976, and determined the value of Gest Farms to be $264,050 at the date of Rosa and Dean's marriage.
Gorsek testified that the capitalization of earnings method he used to value Gest Farms did not "break out the real estate and the [personal property]" but was "concerned mostly from its ability to generate cash and generate income or profit to a owner." In the report of his findings admitted into evidence, Gorsek stated that the capitalization of earnings method emphasizes the earnings of a continuing business for valuation purposes and that "[t]he assets owned by the business are viewed as part of the overall income producing capacity of the business rather than separately working assets."
The trial court concluded that Gorsek's valuations were "without regard to its equipment or real estate," and adopted Gorsek's valuations to calculate the appreciation in value of Gest Farms during the marriage.
Rosa's expert, Howard Welty, an appraiser specializing in real estate, equipment, machinery and livestock, testified that he used an asset-based method of valuing the machinery, equipment, and livestock and was not asked to determine what effect removing those assets would have on the income and earnings of Gest Farms. Welty stated in his valuation report that "The Values assigned to the Machinery/Equipment are based upon past sales of similarity that were transacted at well advertised Public Auctions under Fair Market conditions." He emphasized that he was valuing the machinery, equipment, and livestock at prices he believed they would bring at auction based upon their age, condition, and other market factors.
Welty also testified on cross-examination as to the importance of the machinery, equipment, and livestock to the ongoing operation of Gest Farms:
 Q. And, of course, in order to raise crops, you have to have wagons and tractors and combines — and I am no authority on farming, but I am sure the list goes on through at least 60 items, doesn't it?
A. Sure.
 Q. And those are all necessary in order to be able to make this dairy farm function?
A. Yes.
Q. And, obviously, you need dairy cows?
A. Yes.
The trial court adopted Welty's report that placed the current fair market value of the machinery and equipment at $248,400 and the livestock at $84,125. Since the court was unable to determine from the record any value for machinery and equipment at the date of marriage, it determined that the value of all of Dean's share of the machinery and equipment, or $124,000, was a marital asset. The record established that the value of the livestock at the date of marriage was $31,200; thus, the court determined that the value of Dean's share in the $52,924 appreciated value of the livestock, or $26,462, was a marital asset.
 C.
In valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method. James v. James (1995), 101 Ohio App.3d 668, 681; Jensenv. Jensen (Mar. 8, 1995), Lorain App. No. 94CA005808, unreported, at 3. In reviewing a trial court's valuation of a marital asset, an appellate court may not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered. McCoy v. McCoy (1993), 91 Ohio App.3d 570, 574, citingMyers v. Garson (1993), 66 Ohio St.3d 610, 616. See, also,Willis v. Willis (1984), 19 Ohio App.3d 45, 48.
Gorsek used the capitalization of earnings method to value Gest Farms. Earnings-based methods of valuation, such as a capitalized returns methods, do not include asset-based methods of valuation. 1 Fishman, Pratt, Griffith, Wilson, Guide to Business Valuations (2 Ed. 1992) 2-19, Section 220.20. Under an earnings-based method of valuation, the valuator estimates future returns of a business on the basis of the business's net cash flow or net earnings. Id. at 5-1, Section 500.02. A capitalization rate, which is derived from its discount rate, is then applied to the historical earnings of the business. Id. at 5-6, Section505.05. The discount rate "represents the total expected rate of return * * * that a buyer (or investor) would demand on the purchase price of an ownership interest in an asset * * * given the level of risk inherent in that ownership interest." Id. at 5-5, Section505.02.
Welty valued the underlying assets used in Gest Farms' operations. With an underlying assets approach to valuation, "the benefits of ownership would be realized through the hypothetical sale of the company's assets." Id. at 7-1, Section 705.01. Assets are adjusted to their appraised values. Id.
The capitalization of earnings method of valuation presumes that the assets of the business will continue to be used to generate income. Gorsek emphasized that the capitalization of earnings method he used did not "break out the real estate and the [personal property]" but was "concerned mostly from its ability to generate cash and generate income or profit to a owner." If the dairy cows, machinery, and equipment were removed from the operation of Gest Farms, there would be little or nothing left to generate income.
In view of Gorsek's testimony and in the absence of any evidence to contradict it, there was no evidence from which the trial court could conclude that Gorsek's valuations were "without regard to its equipment." Accordingly, the trial court erred in combining both Gorsek's valuation of Gest Farms, which was arrived at on the basis of its ability to generate income, and Welty's fair market valuation of the component assets necessary to produce that income. Gest Farms' second assignment of error and sub-part "A" of Dean's first assignment of error are sustained.
 IV.
At trial, both parties presented expert testimony regarding the valuation of five parcels of real estate. The parties' interests in all of the parcels were acquired during the marriage and were used at least in part by Gest Farms for its dairy operation. Parcels 1, 3, 4, and 5 were held jointly by Dean and Russell. Parcel 2 was held jointly by Dean and his mother Berneata.
Dean and Rosa acquired an interest in Parcel 2 in 1982 pursuant to a land contract executed by and between Dean's parents Herman and Berneata Gest, as vendors, and Dean and Rosa, as vendees. Herman died in 1991, and in 1994 Berneata executed and delivered to herself and Dean a joint and survivorship deed for Parcel 2.
The trial court determined that Berneata's execution and delivery of the deed was a forgiveness of Dean and Rosa's debt to Berneata under the land contract, that Dean acquired a 50 percent interest in Parcel 2 as a result of Berneata's transfer, that Dean's interest was acquired during the marriage, and that his 50 percent interest was a marital asset. The court valued Dean's portion of Parcel 2 at $89,500 and awarded half of that amount to Rosa.
In sub-part "B" of Dean's first assignment of error, Dean argues that Berneata's gift was made solely to him after Rosa filed for divorce and was, therefore, his separate property.
R.C. 3105.17.1(B) provides that, in a divorce proceeding, the trial court must make a determination of what is marital property and what is separate property and divide such property equitably. R.C. 3105.17.1(A)(3)(a) provides:
 "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
 (i) All real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]
R.C. 3105.17.1(A)(3)(b) sets forth several exceptions to the definition of "marital property" and includes "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.17.1(A)(3)(b)(vii). A trial court's characterization of property as separate or marital is a mixed question of law and fact and must be supported by sufficient credible evidence. Kelly v. Kelly (1996), 111 Ohio App.3d 641,642.
In arguing that the deed from Berneata to herself and Dean was a gift to him alone, Dean relies on Petry v. Petry (1991),81 Ohio App.3d 30, 33-34, for the proposition that "a deed executed in conformity to the applicable statute (R.C. Chapter 5301) is conclusive of the facts stated therein, and the grantor of such a deed cannot assert rights contrary to the terms of the deed without first securing reformation or cancellation of the deed."
Petry, however, involved a quitclaim deed executed by a husband to his wife and husband's later assertion that no gift was intended. In determining that the property was marital property, the trial court had placed the burden on the wife to show by a preponderance of the evidence that her husband had intended the transfer to her as a gift. The Franklin County Court of Appeals reversed, holding that "the transfer of property from one spouse to another, by gift or otherwise, renders such property the separate property of the spouse to whom conveyed unless it is otherwise demonstrated by appropriate evidence" brought forward by the spouse challenging the transfer. Id. at 34.
In the present case, the parties are not disputing the effect of a deed from one spouse to the other. They are disputing the effect of a deed from a third party to one of the spouses which purports to divest the other spouse of her rights under a land contract.
R.C. 3105.17.1(H) provides that "[e]xcept as otherwise provided in this section, the holding of title to property by one spouse individually * * * does not determine whether the property is marital property or separate property." The effect of R.C. 3105.17.1(H) "is to negate the presumption of a gift, but not to preclude such a finding upon an appropriate factual context."Barkley v. Barkley (Apr. 14, 1997), Pickaway App. No. 96CA5, unreported.
The trial court's characterization of the interest granted by Berneata to herself and Dean as marital property is supported by competent credible evidence. Rosa and Dean executed a land contract on July 6, 1982, to purchase Parcel 2 from Herman and Berneata Gest for $75,000. The contract reflects a $20,000 gift from Herman and Berneata as "Vendor" to Rosa and Dean as "Vendee." Berneata testified that she gifted Rosa and Dean $10,000 each in order to lower the purchase price of the property. The remaining principal balance of $55,000 was to be repaid by Dean and Rosa with interest at the rate of 10 percent per annum in consecutive monthly installments of $350. There was evidence that these payments were made from 1982 through 1994 by Gest Farms on behalf of Dean, and that the payments represented part of Dean's partnership distribution, although Berneata claimed to have received no payments pursuant to the contract.
Herman died in 1991, leaving Berneata as the sole fee simple owner of Parcel 2. On January 11, 1994, Berneata executed the joint and survivorship deed for Parcel 2 to herself and Dean. The deed was recorded on February 10, 1994. Although Rosa initially filed for divorce in 1993, the parties thereafter attempted a reconciliation and resumed living together. Rosa testified that their efforts failed and that the parties separated at the end of March 1994. The trial court found that the parties' separation occurred in May 1994. In either event, Dean's argument that Berneata would not have gifted Parcel 2 to him and to Rosa in 1994 because Rosa had already filed for divorce is greatly diminished by the fact that Rosa and Dean were still living together when the deed was executed.
In view of the uncontroverted evidence that Rosa paid a portion of the purchase price for Parcel 2 with money gifted to her, the fact that she remained obligated under the land contract for 12 years, and the substantial evidence that payments were made pursuant to that contract for 12 years, there was sufficient credible evidence from which the trial court could conclude that Dean's interest in Parcel 2 was marital property. Moreover, Dean failed to meet his burden of establishing by clear and convincing evidence that Berneata's forgiveness of the debt was intended only as a gift to him.
Sub-part "B" of Dean's first assignment of error is overruled.
 V.
At the time of separation, Dean was a joint owner of five parcels of real estate. At trial, Rosa's expert, Howard Welty, determined the fair market value of each of the five parcels using a comparable sales method. Dean provided the testimony of a Lorain County auditor.
The trial court accepted Welty's valuation of the parcels and concluded that Parcels 1, 3, and 5 were purchased with monies earned by Gest Farms during the marriage, that 50 percent of such monies were the marital property of Rosa and Dean, and that 50 percent of the fair market value of Parcels 1, 3, and 5 were, thus, the marital property of Rosa and Dean. The court valued the marital interest in Parcel 1 at $30,000, Parcel 3 at $71,000, and Parcel 5 at $23,500, and awarded Rosa one-half of each of such amounts. The court determined that Dean's interest in Parcel 4 was Dean's separate property.
The trial court awarded Rosa: (1) the value of one-half of Dean's 50 percent interest in Gest Farms; (2) the value of one-half of Dean's 50 percent interest in the machinery, equipment, and livestock owned by Gest Farms; (3) the value of one-half of Dean's 50 percent interest in Parcels 1, 2, 3, and 5; and (4) one-half of the parties' interest in various bank accounts. The court reduced the $233,053 total award of marital property to Rosa by amounts already received by her from Dean's separate property and ordered that the $220,807 balance be paid by Dean as follows:
 $50,000 to be paid on or before July 1, 1996; $50,000 to be paid on or before July 1, 1997; $50,000 to be paid on or before July 1, 1998; $50,000 to be paid on or before July 1, 1999; and the balance remaining to be paid on or before July 1, 2000. The entire amount of $220,807.00 is to bear interest at the rate of six percent (6%) per annum compounded annually. * * * In order to secure Plaintiff's right to these payments, the Plaintiff is herewith granted a first mortgage on the parcels of real estate referred to herein as Parcels 1, 2, 3, 4 and 5. The Plaintiff is further granted a lien against all farm equipment owned by Gest Farms.
 In the event Defendant is able to obtain the entire amount of $190,000.00 on or before July 1, 1996 and delivers to Plaintiff that sum on or before that date, the Court will allow a compromise of this property settlement for the $190,000 and the encumbrance will have no effect. The $190,000.00 shall satisfy in its entirety the obligations of the Defendant[.]
The trial court also reserved the right to appoint a receiver to liquidate "any or all real estate, or business equipment" in the event Dean failed to make any of the installment payments to Rosa. In making its property award, the trial court stated that it had "considered all relevant factors as set forth in Ohio Revised Code, Section 3105.17.1(F)(1-9) in attempting to arrive at a division of the marital property of the parties."
In sub-part "C" of Dean's first assignment of error, he argues that the trial court failed to consider R.C. 3105.17.1(F)(5), (6), and (7) in making its division of marital property. Specifically, he asserts that there is no finding by the trial court that it considered costs of sale, tax consequences of a sale, or the economic desirability of retaining an asset or an interest in an asset intact.
Pursuant to R.C. 3105.17.1(C)(1), a trial court must make an equal division of marital property unless an equal division would be inequitable. Getter v. Getter (1993), 90 Ohio App.3d 1, 6. The trial court has broad discretion in determining what property division is equitable. Cherry v. Cherry (1981), 66 Ohio St.2d 348, paragraph two of the syllabus. Appellate review is limited to a determination of whether the trial court abused its discretion in dividing marital property. Briganti v. Briganti
(1984), 9 Ohio St.3d 220, 222. This requires that the reviewing court "view the property division in its entirety, consider the totality of the circumstances, and determine whether the property division reflects an unreasonable, arbitrary or unconscionable attitude on the part of the domestic relations court." Jelen v.Jelen (1993), 86 Ohio App.3d 199, 203.
In making an equitable division of marital property, the court must consider all relevant factors, including those set forth in R.C. 3105.17.1(F):
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable.
Pursuant to R.C. 3105.17.1(F)(6), a trial court is required to consider the tax consequences of a property division, provided those consequences are not speculative. James v. James (1995),101 Ohio App.3d 668, 688; Guidubaldi v. Guidubaldi (1990),64 Ohio App.3d 361, 367. "For example, if the award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered." Day v. Day (1988), 40 Ohio App.3d 155,159. However, where an appellant has failed to produce evidence of tax consequences in the trial court, or where nothing in the record suggests that an asset must be liquidated, tax consequences are speculative and need not be considered. SeeWhite v. White (Feb. 28, 1998), Summit App. No. 18275, unreported, at 7; Guidubaldi, 64 Ohio App.3d at 367-368.
Pursuant to R.C. 3105.17.1(F)(5), a trial court must also consider the economic desirability of retaining an asset intact.Krisher v. Krisher (1992), 82 Ohio App.3d 159, 165. Pursuant to R.C. 3105.17.1(F)(7), the trial court must consider the costs associated with the sale of an asset to effectuate an equitable distribution of property. See Terry v. Terry (1994), 99 Ohio App.3d 228,233.
In this case, the trial court adopted Welty's appraisals of Parcels 1 through 5, arrived at largely by the comparable sales method of valuation. In cross-examining Welty, Dean's counsel elicited Welty's opinion that, if the parcels were sold, the sale might have an impact on Gest Farms as a business. Welty also stated that there would be approximately a 5 percent cost for realtors' or auctioneers' commissions and 5 percent for closing costs, prorations, escrow, and title expenses. Welty also agreed there would be serious tax consequences for liquidating the assets, including capital gains taxes.
Dean's expert, a representative of the Lorain County Auditor's Office, testified that owners of productive farm land are provided with certain tax reductions for agricultural use. In the event the five parcels at issue were sold for a non-agricultural use, either the buyer or seller would be responsible for repayment of $17,330.90 in tax reductions. Gest Farms' appraiser, John Gorsek, testified that upon sale of the real estate, one-third of the proceeds would be lost to taxes.
Despite the trial court's statement that it considered all of the R.C. 3105.17.1(F) factors in making its division of property, there is nothing in the trial court's order to demonstrate that it considered the tax effect, costs, or impact on the business of Dean's sale of real or personal property to meet the court's order to pay Rosa $220,807 in cash plus interest. While the court did not order the sale of any property, sale appears to be the practical effect of the court's order. The property awarded to Dean included less than $10,000 in cash. His monthly draw from Gest Farms is $1,400. Testimony suggested that Dean might be entitled to a $40,000 cash distribution from Gest Farms but that amount is far below the amount needed to satisfy Dean's obligations to Rosa. Moreover, the liens placed on the real and personal property to secure Dean's cash payments to Rosa likely impede Dean's ability to borrow against the property.
Accordingly, we find that the trial court either failed to consider the factors set forth in R.C. 3105.17.1(F)(5), (6), and (7) in making its division of property, failed to provide enough detail in its order to allow this court to determine that such factors were considered, or determined that Dean had other means than sale of satisfying his obligations to Rosa, thus making sale merely speculative. Sub-part "C" of Dean's first assignment of error is sustained.
 VI.
The trial court ordered Dean to pay $727 per month in child support and to pay Rosa $600 per month in spousal support. Dean was ordered to execute wage assignments in accordance with both support orders. Dean was also ordered to obtain health insurance coverage for the children, at a cost he estimates at $300 per month, and to pay 70 percent of their uninsured medical costs.
In his second assignment of error, Dean maintains that the aggregate support payments and insurance costs of $1,627 per month that he is required to pay represent 62 percent of his gross earnings and exceed the limits set by R.C. 3113.21(D)(1)(b). Dean does not argue in this assignment of error that the spousal award to Rosa violates the statutory guidelines for calculation set forth in R.C. 3105.18 or that the child support ordered violates the statutory guidelines set forth in R.C. 3113.21.5. He argues only that the court's order violates R.C. 3113.21(D)(1)(b).
R.C. 3113.21(A) requires the trial court, when ordering certain spousal support and child support payments, to order the withholding of income or assets of the obligor in order to satisfy the support obligations. R.C. 3113.21(D) sets forth certain withholding and notice requirements to be made by the court to an employer or other "payor" from whom the obligor is receiving income. R.C. 3113.21(D)(1)(b)(i) requires the court to notify the payor of the amounts to be withheld and requires the court to include a statement "that the amount actually withheld for support and other purposes, including the fee described in division (D)(1)(b)(xi) of this section, shall not be in excess of the maximum amounts permitted under section 303(b) of the `Consumer Credit Protection Act,' 15 U.S.C. § 1673(b)."
Section 303(b) of the Consumer Credit Protection Act, Section 1673(b), Title 15, U.S. Code (the "Act") provides:
 (2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed —
 (A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and
 (B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week[.]
The trial court found Dean's average annual earnings to be $31,325. The court also found that Gest Farms had the ability to adjust distributions to its partners and had made sizable unequal distributions to Russell during the pendency of Dean and Rosa's divorce. Testimony suggested that the partnership had made as much as $40,000 in aggregate distributions to Russell in 1994, while making no distributions to Dean.
Only the spousal and child support awards, in the aggregate amount of $1,317, were subject to the trial court's withholding order. Although Dean was ordered to provide health insurance for the children, the cost of that insurance was not the subject of a withholding order. There was no evidence that Dean was supporting any prior spouses or children; thus, the court was permitted to order the withholding of 60 percent of Dean's disposable earnings. "Disposable earnings" are defined as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." Section 1672(b), Title 15, U.S. Code.
If Dean's annual gross earnings were the average earnings of $31,325 determined by the trial court, his weekly gross earnings would amount to $602.40. Dean has provided this court with no evidence that any of his partnership distributions or other earnings are subject to withholding. Thus, on the basis of the information that has been provided, 60 percent of Dean's weekly earnings, or $361.44, may be subject to a withholding order. The $1,327 monthly amount ordered to be withheld by the trial court, or $308.60 per week, is within the amount allowable under the Act. If the $40,000 in unequal distributions by Gest Farms is available to be paid to Dean, the weekly allowable withholding under the Act rises to $1,371.63.
To the extent that the trial court's order exceeds the maximum withholding limitations under the Act, the withholding employer bears the responsibility to see that no more of the employee's wages are withheld than permitted by the Act. In reYeauger (1992), 83 Ohio App.3d 493, 500. See R.C.3113.21(D)(1)(b)(viii). The withholding limitation does not excuse an obligor from satisfying the entire order for support, but provides only that the entire amount may not in all cases be withheld from wages. In re Yeauger, supra, at fn. 3.
Accordingly, on the record before us, the trial court did not err in making its support order. Dean's second assignment of error is overruled.
 VII.
At trial, Rosa presented the expert testimony of an attorney whose practice is in the domestic relations field and who testified that the hourly billing rate of Rosa's attorney was fair and reasonable. The trial court found that in the prosecution of the divorce action: (1) Rosa had incurred attorney fees in the amount of $15,400; (2) the fees were reasonable and necessary to fully litigate Rosa's claim; and (3) Dean "is in a better position than [Rosa] to pay these costs." The court ordered Dean to pay the amount of the fees to Rosa as a lump-sum spousal support payment. In his third assignment of error, Dean argues that the trial court abused its discretion by awarding attorney fees contrary to R.C. 3105.18(H).
R.C. 3105.18(H) provides:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating his rights and adequately protecting his interests if it does not award reasonable attorney's fees.
The decision whether to grant attorney's fees is committed to the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. Demo v. Demo (1995),101 Ohio App.3d 383, 388-389. "The determination of whether to award attorney fees should be based upon the factors of R.C. 3105.18, specifically the relative earning abilities of the parties and the relative assets and liabilities of each." Schultz v. Schultz
(1996), 110 Ohio App.3d 715, 725,
The parties had been married nearly twenty years at the date of separation. Although Rosa worked for a few years at the beginning of the marriage, she worked only minimally after the children were born. Most of that work consisted of babysitting other people's children in her home. Testimony showed that Dean had impeded Rosa's ability to generate even that minimal income by threatening her in the presence of those children and their parents. The court determined that Rosa's work history indicated that she was capable of securing employment only at a minimum wage rate of $8,840 annually.
Dean had been employed by Gest Farms since the date of marriage. The court concluded that Dean's average annual earnings were $31,325 and that his future earnings were capable of increasing "insofar as the partnership has in the past made unequal distributions of its income, and that the partnership income and assets will likely grow as they have done through the course of the marriage." Neither party has any formal education beyond high school.
Although Dean was ordered to pay Rosa substantial cash payments as part of the property settlement, the record indicates that nearly all of the parties' assets were in land, equipment, and livestock used by Gest Farms, and that there was little cash or liquid assets. It appears that the most likely source of cash, prior to any sale of assets, was from Dean's draw and distributions from Gest Farms.
Accordingly, we find no abuse of discretion in the trial court's award of attorney fees. Dean's third assignment of error is overruled.
The decision of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
SLABY, P. J.
DICKINSON, J.
CONCUR.
[1] Appellants do not dispute the separate valuation of the real estate parcels used in the farming business because Gest Farms paid rent for the use of those parcels and the rentals are reflected in Gorsek's valuation.