DECISION.
{¶ 1} The two appeals consolidated for this decision stem from a judgment of divorce granted to plaintiff-appellant/cross-appellee Betty Dunn and defendant-appellee/cross-appellant James Dunn. Together, the parties raise seven assignments of error, all of which relate to the trial court's division of marital property and the award of spousal support to Betty Dunn. Because we find none of the assignments to have merit, we affirm the judgment of the trial court.
FACTS
{¶ 2} Betty Dunn and James Dunn were married on February 19, 1966. They had two children during their marriage, both of whom are emancipated. They physically separated on March 26, 1998. Betty filed a complaint for divorce in April 1998. The trial court entered a decree of divorce on March 30, 2001.
 ANALYSIS
{¶ 3} In her first assignment of error, Betty challenges the trial court's treatment of James's interest in his pension plan with the State Teachers Retirement System (STRS). Betty claims that the trial court improperly considered James's hypothetical Social Security benefits to be marital property subject to division, thereby reducing the value of James pension and creating an unequal distribution of the parties' assets. We disagree.
{¶ 4} R.C. 3105.171(A)(3)(a)(iii) provides that retirement benefits, including pension benefits that have vested during the course of the marriage, are marital assets to be considered when dividing marital property. In Hoyt v. Hoyt, the Ohio Supreme Court recognized that even though Social Security benefits are not true marital assets, the trial court may, nonetheless, consider them when making an equitable distribution of the parties' marital assets.[1] In Walker v. Walker,[2]
we acknowledged that "[p]ublic employees who do not participate in the Social Security system may be penalized because the portions of their pension equivalent to Social Security contributions are marital property subject to division, while their spouses' contributions to Social Security cannot be considered marital property under federal statute." As a result, we affirmed the trial court's division of the parties' retirement benefits based on a hypothetical Social Security setoff. InWalker, the wife was a long-time employee of the General Electric Company, while the husband had spent his career with the U.S. Postal Service. We held that the trial court did not abuse its discretion when it deducted the present value of the husband's hypothetical Social Security benefits from the marital portion of his pension plan.
{¶ 5} Similarly, in this case, we cannot say that the trial court abused its discretion when it permitted a setoff for James's hypothetical Social Security benefits. The parties presented evidence that Betty had earned retirement benefits through STRS and Social Security. James, an elementary school principal, had solely participated in STRS and was thus precluded from participating in the Social Security system. Because the trial court followed this court's decision in Walker v. Walker, we cannot say that the trial court's allowance of a setoff for James's hypothetical Social Security benefits constituted an abuse of its discretion.
{¶ 6} Betty next argues that even if such a setoff was proper, the trial court should have tax-assessed the hypothetical Social Security benefits to reflect the same tax reduction given to James's pension benefits. We disagree.
{¶ 7} The record reveals that while the parties stipulated to the tax impact of the parties' STRS pension benefits, neither party presented any evidence or testimony regarding the tax impact of the Social Security benefits and setoffs. Furthermore, Betty has cited no case law that would support such a reduction. Consequently, we find this argument to be without merit.
{¶ 8} Betty finally argues that the trial court erred by failing to account for statutory changes to the STRS pension formula that increased the value of James's pension. We disagree.
{¶ 9} Substitute Senate Bill 190 was signed by the governor on April 12, 2000. Senate Bill 190 became effective July 1, 2000. The bill, however, made changes to R.C. 3307.38 retroactive to July 1, 1999. These changes altered the benefit computation for STRS by increasing the benefit formula, among other things, for participants such as James who had over 35 years of contributing service.
{¶ 10} The trial court held that the retroactivity of Senate Bill 190 did not extend to any period before July 1, 1999, and that Betty was not entitled to any new valuation of any benefit under the new legislation. The trial court's decision was based on the facts that the parties had stipulated that their marriage had ended on March 26, 1998, and that the magistrate had valued James's pension plan on October 6, 1998. Having reviewed the record, we cannot say that the trial court abused its discretion in determining that Senate Bill 190 afforded Betty no right to a new valuation. As a result, we overrule her first assignment of error.
{¶ 11} In her second assignment of error, Betty contends that the trial court erred in allowing James a nonmarital setoff for money that was not traced. In his first cross-assignment of error, James argues that the trial court erred by failing to award him credit for all of his separate inherited property. In his second cross-assignment of error, James argues that the trial court erred when it refused to credit him for the appreciation on his separate inherited property. Because these assignments are interrelated, we address them together.
{¶ 12} Generally, we review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse-of-discretion standard.[3] We have recognized, however, that when a party challenges the trial court's finding of fact as to the characterization of property as separate or marital, we must review that determination under a manifest-weight-of-the-evidence standard.[4]
Under this standard, we must determine whether the trial court's finding is supported by competent, credible evidence.[5]
{¶ 13} R.C. 3105.171 requires the trial court to make an equitable distribution of property in divorce proceedings. Under R.C. 3105.171(B), the court is required to "determine what property constitutes marital property and what property constitutes separate property." Separate property includes, among other things, "an inheritance by one spouse by bequest, devise or descent during the course of the marriage."[6]
{¶ 14} Further, R.C. 3105.171(A)(6) provides that the commingling of separate property and marital property does not destroy the character of the separate property unless its identity as separate property is not traceable.[7] Any party who seeks to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property.[8]
{¶ 15} The record reveals that the parties owned three houses during the marriage. When the parties sold one house, another one was purchased with proceeds from the prior sale. James testified that his nonmarital money was placed in these houses at various times. For purposes of this appeal, though, we are only concerned with three particular payments. James testified that he received three lump-sum distributions from his mother's estate totaling $37,500, and that he made three lump-sum payments on the mortgage for the second home that corresponded with each of the distributions.
{¶ 16} The magistrate found in his initial decision that James had not presented any records to demonstrate what funds were on deposit in the parties' bank accounts at the time the mortgage payments were made and how much of the funds had come from the parties' assets and not solely from the James's inherited funds. Following objections, the trial court changed the date that James had received the lump-sum distributions from his mother's probate estate and remanded the matter to the magistrate for a determination of whether this factual error changed the magistrate's conclusion that James had failed to trace any separate funds from his inheritance. On remand, the magistrate concluded that because James had received the final distribution from his mother's estate prior to the final mortgage payment on the parties' second home, James should be credited with having made the final payment on the mortgage in the amount of $14,523.82 from his separate property. The trial court agreed with the magistrate's determination.
{¶ 17} Betty argues in her second assignment of error that the trial court should not have credited James with making this final mortgage payment from his inherited funds because there was evidence that James had deposited his inheritance into the parties' joint bank account, thus destroying the separate character of the money. She further argues that the fact that James received the final distribution from his mother's estate prior to the final mortgage payment on the parties' second home did not change the traceability issue. We disagree.
{¶ 18} The trial court credited James with making the final mortgage payment from his separate property because he had presented evidence that he had received the final distribution from his mother's estate in the amount of $23,047 prior to March 2, 1974, when a lump-sum payment was made on the parties' second mortgage. Thus, the trial court found that even though the inherited funds had been commingled with marital money in the parties' joint bank account, James was entitled to a nonmarital setoff because he had traced the payment by a preponderance of the evidence to his inherited funds. In light of this evidence, we cannot say that the trial court's characterization of this mortgage payment as James's separate property was against the manifest weight of the evidence. Therefore, we overrule the second assignment of error.
{¶ 19} In his first cross-assignment of error, James argues that the trial court erred in failing to credit him for all of his separate inherited property. He claims that he made two additional lump-sum payments on the parties' mortgage on their second home from funds he inherited from his mother's estate totaling $17,565.89, and that these payments should have been considered as his separate property. We disagree.
{¶ 20} As mentioned earlier, because James was seeking to have a portion of the marital residence classified as his separate property, he had the burden of proof, by a preponderance of the evidence, to trace the asset to his separate property. The traceability of separate property is a factual determination that we will not reverse unless it is against the manifest weight of the evidence.[9]
{¶ 21} Having reviewed the record, we agree with the trial court that James failed to show by a preponderance of the evidence the traceability of the remaining sums from his inheritance as separate property. Although James presented documentation that he applied for and received $8,300 from his mother's tax-sheltered annuity with Union Central Life Insurance Co., he presented no evidence as to when he received the money. And even though James presented evidence that showed he received a disbursement in the amount of $9,514.36 from the his mother's account with the State Teachers Retirement System in July 1973, he was unable to show that the payment came before the closing on the parties' second home.
{¶ 22} Moreover, James testified that these inherited funds were deposited in the parties' joint savings or joint checking account. James presented no records to show that these funds were on deposit in these accounts at the time the payments were made and how much of these payments came from the marital funds of the parties and not solely from his inherited funds. Because James failed to trace the two lump-sum payments to his inherited funds, we overrule the first cross-assignment of error.
{¶ 23} James further argues in his second cross-assignment of error that the trial court erred when it refused to credit him for the appreciation on his separate inherited property. We disagree.
{¶ 24} To determine whether James was entitled to appreciation on his separate inherited property, the key inquiry was not the characterization of the property as separate or marital, but whether the appreciation on the property was passive or was due to the expenditure of significant marital funds or labor.[10] That is because marital property includes the appreciation on separate property due to the labor, monetary, or in-kind contributions of either or both spouses that occur during the marriage.[11] Thus, for James to receive appreciation on the $14,523.82 mortgage payment that the trial court credited as his separate property, he needed to demonstrate that the appreciation on his mortgage payment was passive.[12]
{¶ 25} James presented no evidence that the appreciation on the mortgage payment was passive. Additionally, because there is evidence in the record to demonstrate that the appreciation in the value of these marital homes was due to the labor, monetary, or in-kind contributions of either or both spouses during the marriage, the trial court appropriately divided the increased equity as a marital asset.[13] Consequently, the trial court did not err in crediting James with only $14,523.82 as his separate property. As a result, we overrule the second cross-assignment of error.
{¶ 26} In her third assignment of error, Betty contends that the trial court erred when it failed to award her a fifty-percent interest in James's accumulated sick days and vacation days if they were used prior to retirement. We disagree.
{¶ 27} Having reviewed the record, we conclude that the trial court's decision to award Betty a fifty-percent interest in James's accumulated sick and vacation days after his retirement was supported by competent, credible evidence. The trial court was presented with evidence that James, who was fifty-six years old, had accumulated vacation and sick pay with a value of $33,000, which would be taxed either at retirement or when used during his employment. James presented testimony that he suffered from a variety of health problems including high blood pressure, liver problems, heart disease, high cholesterol, two herniated discs, and a pinched nerve. Although none of these conditions prevented him from working, it might have been necessary for him to utilize such days if his health declined. Thus, this asset was contingent upon James remaining in good health. Because the trial court properly valued the sick and vacation time, required James to report the value of the sick and vacation time upon his retirement, and retained jurisdiction in the event that the gross amount paid to James upon retirement was less than $33,000, we cannot conclude that the trial court abused its discretion by failing to award Betty a fifty-percent interest in James's accumulated sick and vacation days used prior to retirement. Consequently, we overrule the third assignment of error.
{¶ 28} In her fourth assignment, Betty argues that the trial court erred when it failed to award spousal support for an indefinite duration. Betty argues that because her marriage to James was for a long duration, the trial court should have awarded her spousal support indefinitely. We disagree.
{¶ 29} Trial courts have broad discretion when determining an award of spousal support.[14] Accordingly, this court will not reverse a spousal-support award absent an abuse of discretion.[15] An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable.[16]
{¶ 30} The Ohio Supreme Court has held that where a payee spouse has the resources, ability, and potential to be self-supporting, an award of spousal support should be terminable on a specified date.[17] A trial court, however, may award spousal support for an indefinite duration where (1) the parties have been married for a long duration, (2) the parties are of an advanced age, or (3) a spouse has been a homemaker who has had little opportunity to develop meaningful employment outside the home.[18]
{¶ 31} In this case, the trial court considered all of the statutory factors listed in R.C. 3105.18(C). The record reveals that Betty was fifty-five years of age at the time of the divorce and was employed full-time, making approximately $20,000 a year. Betty had been employed as a teacher during the early years of the marriage, but she had stopped teaching after the children were born. The court also found that although Betty could become re-certified as a teacher, she did not wish to do so. The court further found that even though Betty suffered from Graves disease, it was treatable with medication and did not affect her ability to work. Based upon these and other factors, the trial court awarded spousal support to Betty in the amount of $1,500 per month until James reached the age of 65 or until such time as either party died, or Betty remarried, whichever event occurred first.
{¶ 32} Given that Betty had a college education; that she was employed outside the home at the time of the divorce, and that she was not precluded from working by her health problems, we cannot say that the trial court abused its discretion in providing a termination date for Betty's spousal support. Furthermore, the divorce decree provides that the trial court will retain jurisdiction to alter the amount of spousal support in accordance with a change in circumstances. Thus, should Betty become unable to support herself financially in the future, she may file a motion with the trial court to modify the term of the spousal support award. Consequently, we overrule the fourth assignment of error.
{¶ 33} In his third cross-assignment of error, James argues that the trial court erred when it ordered him to pay a 10% interest rate on an equalizing distribution. We need not address this issue because there is no order in the divorce decree that requires James to pay Betty an equalizing distribution. The final decree of divorce requires Betty, not James, to pay to an equalizing distribution. Thus, we overrule, the third cross-assignment of error.
CONCLUSION
{¶ 34} Based on our foregoing analysis, we affirm the judgment of the trial court.
Judgment affirmed.
Painter, P.J., Hildebrandt and Sundermann, JJ.
[1] (1990), 53 Ohio St.3d 177, 180, 559 N.E.2d 1292.
[2] (1996), 112 Ohio App.3d 90, 92, 677 N.E.2d 1252.
[3] See Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293.
[4] See Kelly v. Kelly (1996), 111 Ohio App.3d 641, 642,676 N.E.2d 1210.
[5] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[6] See R.C. 3105.171(A)(6)(a)(i).
[7] See Peck v. Peck (1994), 96 Ohio App.3d 731, 734,645 N.E.2d 1300.
[8] See id.
[9] See James v. James (1995), 101 Ohio App.3d 668, 656 N.E.2d 399.
[10] See R.C. 3105.171(A)(4), 3105.171(A)(6)(a)(iii), and3105.171(A)(3)(b)(iii).
[11] R.C. 3105.171(A)(3)(b)(iii).
[12] See Price v. Price, 11th Dist. No. 2000-G-2320, 2002-Ohio-299.
[13] See Henderson v. Henderson (Nov. 1, 1995), 1st Dist. No. C-940833.
[14] See Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67,554 N.E.2d 83.
[15] See Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94,518 N.E.2d 1197.
[16] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 ,450 N.E.2d 1140.
[17] See Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, paragraph one of the syllabus.
[18] See id.