KELLY, Appellee,

v.

KELLY, Appellant.

[Cite as *Kelly v. Kelly* (1996), 111 Ohio App.3d 641.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950597.

Decided June 12, 1996.

■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Phyllis G. Bossin,* for appellee.

*Beckman, Weil, Shepardson & Faller* and *Barbara J. Howard,* for appellant.

---

*Per Curiam.*

Lawrence Kelly, defendant-appellant, appeals from the decision of the trial court contained in the decree of divorce entered August 8, 1995. The trial court had previously adopted the report of the referee over objections by Mr. Kelly.[1]

In his first assignment of error, Mr. Kelly argues that the trial court abused its discretion in determining that a $12,500 relocation payment to him by his employer was a marital asset.

■■■■ As a general matter, we review the overall appropriateness of the trial court's property division pursuant to divorce proceedings under an abuse-of-discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293. However, we agree with our colleagues in the Fourth District Court of Appeals that with the enactment of R.C. 3105.171 the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and that the characterization must be supported by sufficient, credible evidence.[2] See *McCoy v. McCoy* (1995), 105 Ohio App.3d 651, 664 N.E.2d 1012; *Miller v. Miller* (Dec. 1, 1993), Washington App. No. 93CA7, unreported, 1993 WL 524966; *Wroblewski v. Wroblewski* (June 29, 1993), Gallia App. No. 92 CA 23, unreported, 1993 WL 256326; *Roberts v. Roberts* (Feb. 18, 1993), Highland App. No. 92 CA 800, unreported, 1993 WL 49461. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. R.C.

---

1. We have *sua sponte* removed this case from the accelerated calendar.

2. R.C. 3105.171 became effective on January 1, 1991. R.C. 3105.171(B) provides:
   "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property."

3105.171(D); *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

■ One definition of "marital property" is property acquired during the marriage. R.C. 3105.171(A)(3). The trial court's characterization of the relocation allowance as marital property is consistent with this statutory definition and is supported by competent, credible evidence.

Mr. Kelly did not receive the allowance as a part of his transfer to California. The allowance was earned and became payable only when the contract to purchase the marital residence was executed. The house was purchased by both spouses seven months after they were married. The trial court did not err in finding that the $12,500 was marital property. The first assignment of error is overruled.

■ In his second assignment of error, Mr. Kelly argues that the trial court erred in awarding him 6.8 percent of the *net profit* from the sale of the final marital residence ("Heather Hill") rather than 6.8 percent of the eventual *gross sale proceeds* of the final marital residence.[3] Relatedly, Mr. Kelly argues that the trial court erred in calculating his percentage of separate property in the Heather Hill home.

The parties purchased a house in San Ramon, California, on February 26, 1982, and later sold this house, contributing all the proceeds from the sale to the purchase of a home in Cincinnati, Ohio, on Heather Hill Boulevard.

R.C. 3105.171(D) states that in determining the property division in a divorce action, the court must disburse a spouse's separate property to that spouse.

In this case, the trial court found that Mr. Kelly contributed his separate funds to the purchase of the San Ramon residence and that those funds have remained readily identifiable and can be traced to the equity in the Heather Hill residence.[4] The trial court calculated Mr. Kelly's separate contribution to the California residence as a percentage of the entire purchase price, mortgage included. However, the court then calculated Mr. Kelly's separate contribution to the Heather Hill residence as a percentage of the sale price without the mortgage. By using this inconsistent approach, the trial court did not return to Mr. Kelly the entire value of his separate property invested in the house. This was error.

---

3. We do not agree with Mrs. Kelly that this argument was waived. It has been properly preserved for appeal.

4. The parties have not contested the referee's finding that all but $15,000 of the appreciation of the California home was due to a passive gain, and that part of the gain is Mr. Kelly's separate property.

■

■ Mr. Kelly argues that the trial court also erred in performing the calculations, which resulted in a figure of 6.8 percent.[5] We agree that the calculation below is inaccurate.[6] Therefore, we have recalculated Mr. Kelly's percentage of separate property in the gross sale price of the Heather Hill residence using the referee's formula found on page 6 of the report of the referee. Accordingly, Mr. Kelly should receive $21,645 as his separate property.[7]

The second assignment of error is sustained.

Therefore, the judgment of the trial court is affirmed in part and reversed in part, and final judgment is entered in favor of Mr. Kelly in the amount of $21,645.

*Judgment accordingly.*

MARIANNA BROWN BETTMAN, P.J., HILDEBRANDT and PAINTER, JJ., concur.

---

**5.** Mr. Kelly filed a specific objection to this finding by the referee.

**6.** This appears to be nothing more than a mathematical error.

**7.** This figure is derived by multiplying $333,000 by 6.5 percent.