OPINION
Defendant-appellant Cynthia S. Winston appeals the September 14, 1999, Judgment Entry of the Stark County Court of Common Pleas, Division of Domestic Relations, granting a divorce to the parties and determining contested issues, including the health of the defendant-appellant, spousal support, division of property, valuations of property and financial misconduct. Plaintiff-appellee is Michael G. Winston.
 STATEMENT OF THE CASE AND FACTS
The parties were married on July 18, 1981. No children were born as issue of the marriage. The trial court granted a divorce on the grounds of incompatibility based upon the stipulations of both parties and found that the marriage terminated on the first day of the final hearing. The final hearing was conducted before a Magistrate on November 12, 1998, December 8, 1998, December 10, 1998, February 2, 1999, February 9, 1999, and February 11, 1999. On April 19, 1999, the Magistrate issued his 43 page Magistrate Decision. On May 3, 1999, appellant filed objections to the Magistrate's Decision assigning 17 separate errors committed by the Magistrate. On June 22, 1999, while the appellant's objections to the Magistrate Decision were pending before the trial court, appellant filed a Motion for Joinder of an Additional Party, a Restraining Order and Orders to Show Cause. Appellant sought to join Gordon Winston, the father of the appellee, as a party to the action and to restrain Gordon Winston from transferring, removing, selling, mortgaging or otherwise disposing of his interest or assets in Ohio U-Drive It, Inc. (a corporation owned by appellee) Northfield Auto Auction Corp., or a specific Bank One account. The Motion to Show Cause alleged that appellee and Gordon Winston gave false testimony in the hearings. That same day, June 22, 1999, the trial court issued an ex parte Judgment Entry joining Gordon Winston and a Restraining Order was issued. On July 12, 1999, the trial court ordered the parties to submit written arguments relative to the matters raised in appellant's Objections to the Magistrate Decision. After receipt of the parties' written briefs on the objections, the trial court filed a Judgment Entry which stated, in some and substance, "the objections are overruled and [t]he court having made an independent analysis of the issues and the applicable law hereby approves and adopts the Magistrate's Decision and orders it to be entered as a matter of record." On August 30, 1999, issues of contempt were brought before the Magistrate. Upon the parties' request for evidence, the issues were set for an evidentiary hearing on October 28, 1999. Subsequently, on September 14, 1999, the final Judgment Entry of Divorce which re-stated the Magistrate Decision of April 19, 1999, was filed. Appellant filed a notice of appeal on October 8, 1999. Thereafter, on December 6, 1999, appellant filed an Amended Motion and Affidavit for Orders to Show Cause. Appellant stated that appellee violated the trial court's prior restraining order by executing an irrevocable stock or bond power assigning to Gordon Winston all of appellee's interest in Northfield Auto Auction Corp. and Ohio U-Drive-It,, Inc. Appellant asked the trial court to hold appellee in contempt. It is from the September 14, 1999, final Judgment Entry of Divorce, that appellant raises the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION AND THE JUDGMENT OF THE TRIAL COURT IS NOT SUPPORTED BY AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE TRIAL COURT MADE A [SIC] INSUFFICIENT AWARD OF SPOUSAL SUPPORT TO THE APPELLANT FOR AN INSUFFICIENT DURATION AND BASED THE AWARD UPON FINDINGS OF FACT AS TO THE FUTURE EMPLOYABILITY OF THE APPELLANT DESPITE HER MEDICAL AND PSYCHIATRIC CONDITION.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHERE THE TRIAL COURT, AS A SANCTION FOR THE MARITAL MISCONDUCT OF THE APPELLEE DECLARED THE $141,000.00 DEBT TO BANK ONE FROM THE OPERATION OF OHIO MOTOR SALES TO BE THE SEPARATE NON-MARITAL DEBT OF THE APPELLEE, AND THEN AFTER THE APPELLEE PAID THE BANK ONE DEBT WITH MARITAL FUNDS, FAILED TO IMPOSE A SANCTION UPON THE APPELLEE AND WHERE THE AMOUNT OF THE SANCTION IMPOSED SHOULD HAVE BEEN GREATER.
ASSIGNMENT OF ERROR III
 THE JUDGMENT OF THE TRIAL COURT AS TO THE NATURE AND EXTENT OF MARITAL PROPERTY AND AS TO THE DIVISION OF MARITAL PROPERTY AND DEBT IS CONTRARY TO LAW, AN ABUSE OF DISCRETION AND IS NOT SUPPORTED BY AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR IV
 THE JUDGMENT OF THE TRIAL COURT THAT THE INTEREST OF THE APPELLEE IN OHIO U-DRIVE IT, INC. IS THE SEPARATE PROPERTY OF THE APPELLEE AND THE FINDINGS AS TO THE FAIR MARKET VALUE OF THE INTEREST OF THE APPELLEE IN OHIO U-DRIVE IT, INC. ARE CONTRARY TO LAW, CONSTITUTE AN ABUSE OF DISCRETION BY THE TRIAL COURT AND ARE NOT SUPPORTED BY AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR V
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHERE THE TRIAL COURT, AS A FURTHER SANCTION FOR THE MARITAL MISCONDUCT OF THE APPELLEE, OR PURSUANT TO R.C. 3105.18(H) FAILED TO ORDER THE APPELLEE TO PAY ALL OF THE ATTORNEY FEES AND LITIGATION EXPENSES OF THE APPELLANT.
 I
In the first assignment of error, appellant claims that the trial court erred as a matter of law and abused its discretion and that the judgment of the trial court is not supported by the evidence and is against the manifest weight of the evidence in determining both the amount and duration of spousal support awarded to appellee. We disagree. "The trial court enjoys wide latitude in awarding spousal support and its decisions are reversible only for an abuse of discretion. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." In re Jane Doe I (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. "The court's exercise of discretion is governed by R.C. 3105.18, which mandates that the court consider all of the relevant factors in that statute when making awards of spousal support. The court must evaluate the evidence germane to each applicable factor, then weigh the need for support against the ability to pay". Layne v. Layne (1992),83 Ohio App.3d 559, 562-563, 615 N.E.2d 332,333. Further, trial courts are governed by the standards and guidelines imposed by the Ohio Supreme Court in Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 554 N.E.2d 83, paragraph one of the syllabus: Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' right and responsibilities.
As to appellant's arguments that the Judgment is against the manifest weight, judgments supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. C.E. Morris v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261376 N.E.2d 578, syllabus. Specifically, appellant argues that the trial court's conclusion that she is able to work was an abuse of discretion and against the manifest weight of the evidence. The trial of this matter covered six days. The Judgment Entry in this case consisted of 34 pages and was very detailed. Testimony and evidence showed that appellant had received medical treatment by a myriad of doctors since the early 1980's. However, appellant repeatedly received a clean bill of health and no major physical concerns had been found. This did not, however, cause appellant to stop seeking medical evaluations, testing or treatment. Appellant testified that she was employed prior to her marriage, but quit her job in the early 1980's, in part because she was not feeling well, and because she and appellee wanted to travel and appellant could not get the time off from her work. Appellant's primary physician, Dr. Haban, testified that appellant was in no better nor worse physical condition when he first began seeing her, seventeen years before. The trial court reasoned that if appellant was able to work in her physical condition then, and is in the same physical condition now, there is no reason why appellant is not physically capable of working now. The trial court then considered whether appellant's psychological or emotional health would prevent her from being gainfully employed. Appellant presented the testimony of her psychiatrist, Dr. Schaerf. Dr. Schaerf testified that he believed appellant could not work. However, the trial court found Dr. Schaerf's credibility to be in serious question. The trial court found that appellant had repeatedly manipulated her medical care, treatment and doctors. Appellant had been known to mislead one doctor as to the diagnosis of another doctor. The trial court found that appellant had told Dr. Schaerf what she wanted him to say and Dr. Schaerf admitted that he had agreed, in those instances, to testify as she requested, even if he had no personal knowledge regarding the testimony. Significantly, Dr. Schaerf's medical opinion was primarily based upon a diagnosis made after a one hour interview with appellant in which Dr. Schaerf based his diagnosis upon the facts as presented by appellant only. Further, it is clear that the trial court applied the factors provided in R.C. 3105.18
when the trial court made the following findings: Appellee has a BA degree from Ohio State University with a major in accounting. He is the owner of a small business. Appellant's financial statement listed his net monthly income at $2,479.18. The trial court found this to be misleading because appellee uses his corporate entity as an additional source of personal cash and to pay personal expenses as he so chooses. Evidence also reflected that appellee could earn substantially more money should he choose to give up his own company and go to work in some other aspect of the leasing business. At the time of the trial, appellant was unemployed. Appellant has a high school degree and one year of training as a licensed practical nurse. After graduating from LPN school, she had 10 or 11 years of experience working in physician's offices. She was so employed when appellant chose to quit her job because she was beginning to feel bad and wanted to travel with appellee. Appellant has not worked since the early 1980's. Appellant no longer has a current LPN certification. The trial court found that she will need a substantial amount of time to re-educate herself and train for a position in the current job market. Appellee is 44 years of age and in good physical, mental, and emotional condition. Appellant is 48 years of age and the trial court found her to be in the physical, mental and emotional condition as discussed above. The evidence showed that the parties have no significant retirement benefits and the only IRA involved was divided as part of the property division in this matter. The trial court considered that the parties had been married, as of the first day of trial on this matter, seventeen years and four months. During this time, the parties enjoyed a moderately high standard of living. Evidence showed that they traveled, ate out at nice restaurants often, lived in a nice home at Lake Cable, spent time in Florida during the winter months and purchased nice clothing and other personal property. Appellant identified her monthly expenses at $4,575.00 per month. However, the trial court found many of the costs and expenses excessive, especially those related to medical care, or subject to diminishment or removal upon the granting of the divorce. The trial court found appellant's reasonable expenses to be $1,700.00 per month, not including the taxes she would pay on her spousal support. Based upon the testimony and evidence presented, the trial court awarded spousal support of $2,100.00 a month to appellant for 54 months. It is clear from the final Judgment Entry that the factors in R.C. 3105.18 and the guidelines of Kunkle, supra., were considered and applied. We find that the trial court did not abuse its discretion or commit error in finding that appellant will be able to be gainfully employed and awarding spousal support for 54 months. Likewise, we find the trial court's decision as to spousal support amount and duration to be supported by sufficient evidence and not to be against the manifest weight of the evidence. Lastly, appellant has alleged that the trial court abused its discretion when it failed to retain jurisdiction over the award of spousal support. We disagree. The trial court declined to retain jurisdiction, making the following finding: A reading of over 350 pages of Defendant's medical records and Dr. Haban's testimony indicate her condition has not deteriorated since the beginning of her treatment with Dr. Haban seventeen years ago. Also from the very beginning of her treatment with Dr. Haban, she had the same emotional and mental health issues she has now. Her medical records are replete with references to her physical complaints being exacerbated by stress and anxiety. She needs some certainty and security in her financial life while she prepares herself for employment. She will not have this security if the Court retains jurisdiction to modify the order of spousal support. The plaintiff may very well file for modification before the period of support ends. The Court is concerned about the downward trend of the Plaintiff's business caused by intense competition from the large national companies. The business has not really been able to support the lifestyle of the parties for some time. This has resulted in debt which currently burdens the Plaintiff's financial statement. While Plaintiff's financial circumstances might seem to be yet one more reason to retain jurisdiction, the Court does not feel it would be fair to the Defendant to place her under the threat of a potential reduction in spousal support during the fifty- four month period. This may seem unfair to the plaintiff; but, as noted above, he has been guilty of financial misconduct in this marriage. If there is to be a potentially unfair result, it should weigh against him. Furthermore, the defendant needs to spend the next fifty-four months pursuing retraining and opportunities in the employment market. Both parties are desperately in need of an end to this litigation. Were the Court to retain jurisdiction, there is a very real concern the Defendant would spend the next fifty-four months going from doctor to doctor and clinic to clinic, having test after test, in an attempt to prove she is really much sicker than this Court has found her to be. Such an effort would be fruitless and not in her best interest. This is not a life time spousal support case; spousal support will some day stop. Defendant needs to concentrate her efforts on retraining herself in finding gainful employment. She cannot do this is she becomes distracted by the pursuit of yet a worse diagnosis, or if she becomes distracted by the fear and anxiety of Plaintiff's winning a reduction in spousal support. For these reasons, the Court will not retain jurisdiction over spousal support. The trial court attempted to help appellant move along with her life by setting a date upon which spousal support will terminate. Further, the trial court attempted to minimize appellee's ability to deny spousal support to appellant through appellee's precarious business situation and past financial misconduct. We cannot find this decision an abuse of discretion. Appellant's first assignment of error is overruled.
 II
In the second assignment of error, appellant contends that the trial court committed reversible error and abused its discretion when it failed to take appellee's financial misconduct, committed subsequent to the final hearing, into consideration in ruling upon the objections. Appellant submits that the trial court should have modified the division of marital property. We disagree. Some factual history is in order to place appellant's arguments into perspective. The Magistrate, in his Decision, found that appellee had engaged in financial misconduct through the operation of Ohio Motor Sales which had been funded with a Bank One credit line. As a sanction, the Magistrate recommended that the $141,000.00 loan owed to Bank One, which had funded the operation of Ohio Motor Sales, be awarded as the separate responsibility of appellee. Northfield Auto Auction stock, marital property purportedly owned by appellee, was to be sold. The estimated value of the stock was $144,000.00. Pursuant to the April 19, 1999, Magistrate's Decision, as adopted by the trial court in its final Judgment Entry, the proceeds from the sale of the Northfield Auto Auction were to be held in escrow. Taxes were to be estimated and the amount of the estimated taxes was to be held in escrow and released for payment of taxes when they became due. From the remainder, appellee was to receive the first $73,138.00 and the remainder was to be divided equally between the parties. However, prior to release of appellee's share of the proceeds, $4,143.00 was to be provided to appellant from appellee's share to equalize the division of marital property and $18,500.00 was to be released to appellant from appellee's share for partial payment of her attorney fees, thus totaling $22,643.00 to appellant. However, subsequent to the Magistrate's Decision but prior to appellant's submission of objections to the Magistrate's Decision, appellee signed an irrevocable stock or bond power which conveyed appellee's share of Northfield Auto Auction Corp. and Ohio U-Drive-It, Inc. to his father, Gordon Winston. Gordon Winston sold the stock for $148,897.20. Once the Northfield Auto Auction stock was sold, Gordon Winston used the proceeds from the sale of the stock to pay off the Bank One loan, then totaling $142,637.63. Gordon Winston gave the remaining proceeds of $6,259.57 to appellee. This matter was brought to the attention of the trial court as part of appellant's Objections to the Magistrate's Decision. Appellant provided the trial court with a copy of the irrevocable stock and bond power, a copy of a letter sent from appellee's counsel attempting to explain how the events occurred, a sworn letter from Gordon Winston describing how the power came to be signed and dated, documentation supporting the claim that appellee placed the amount of $6,259.57 into his attorney's trust account and that Gordon Winston placed the sum of $126,616.20 into a savings account, which is subject to the jurisdiction of the trial court, in an apparent effort to replace the proceeds from the sale of the stock. The funds presented by appellee and his father total $132,875.77. This amount is $16,021.43 less than the $148,897.20 in proceeds from the sale of the Northfield Auto Auction stock. In ruling upon the Objections, the trial court did not specifically address this matter. Rather, the trial court summarily overruled appellant's objections and adopted the Magistrate's Decision. As the record stands, a contempt proceeding is pending in the trial court to consider appellee's misconduct. Civ.R. 53(E)(4)(b) provides that when objections to a Magistrate's Decision are presented to the trial court, "[t]he court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration." In this case, while the trial court made no findings as to its overruling of appellant's Objections on this new evidence, we find that regardless of the date upon which the irrevocable stock and bond power was signed, appellant could not have presented this evidence to the Magistrate since either (1) the document was signed in 1994 and appellee and Gordon Winston both lied as to the ownership of the Northfield Auto Auction Stock or (2) the document was signed in March, 1999 which was after the conclusion of the hearings before the Magistrate. Therefore, we must consider whether the trial court abused its discretion in failing to modify the Magistrate's decision, hear the matter and/or additional evidence on the matter or recommit the matter to the magistrate. Specifically, appellant contends that the sanction imposed upon appellee for financial misconduct no longer exists since the $141,000.00 personal debt was paid off with marital property. Appellant argues that appellee should still be subject to the $141,000.00 sanction. Therefore, appellant suggests that the trial court should have modified the division of property and provided appellee with $141,000.00 less in property and provided appellant with $141,000.00 more property than had been recommended by the Magistrate's Decision. First, we observe that the proceeds from the sale of the Northfield Auto Auction stock were to be divided in accordance with the final Judgment Entry. To be prejudiced by appellee's actions, appellant must show that she has not and will not receive the proceeds she was awarded by the trial court. Documentation was submitted to the trial court, showing that $132,875.77 was placed, in part, in an escrow account in appellee's attorney's name and, in part, in a bank account in appellee's father's name, subject to the jurisdiction of the trial court. Appellee and his father indicated to the trial court that those proceeds will be available to be distributed to appellee and appellant as originally ordered. The formula in the Judgment Entry which provided for the disbursement of the funds resulting from the sale of the stock refers to the "proceeds" from the sale. Thus, the calculation of the division of those funds begins with the use of the $148,897.20 actual sale proceeds figure. An amount equal to the calculated tax liability is to be set aside for the payment of taxes and held in escrow until it is released to pay those taxes. From that figure, appellee is to receive $73,138.00 as was awarded to appellee pursuant to the Judgment Entry. The remainder is to be divided equally between appellant and appellee. Pursuant to this formula, the $132,875.77 presented to the trial court by appellee and appellee's father is sufficient to provide appellant the share of proceeds to which she is entitled. In essence, we find that appellee has already received $16,021.43 (the difference between the total proceeds of the sale of the stock and the amount presented to the trial court after the sale of the stock) of the $73,138. Therefore, appellee shall receive only $57,116.57 from the $132,875.77. In sum, there was no need for the trial court in the case sub judice to reconsider the recommendations of the Magistrate regarding division of property and debts even though appellee may have violated a court order by disposing of some of the property and paying a debt subsequent to the last day of the trial in front of the Magistrate. All but $16,021.43 of the $148,897.20 sale proceeds are available for distribution. Appellee was to receive $73,138 of that amount and he has received $16,021.43 already of that amount. Therefore, there are sufficient funds available for appellant to receive her share as originally ordered. Despite appellant's concerns, we do not see how appellee comes out $141,000 ahead in this transaction even though his $141,000 separate debt was paid off when appellee's father paid the $141,000 from the sale proceeds. Appellee's father then had to replace the money paid on the debt so that it is available for distribution under the court order. Therefore, either appellee will owe his father money or appellee's father will forgive the debt as a gift to appellee. Certainly appellee's father could have gifted appellee the money at any time to pay the debt. Second, appellant argues that the trial court should have imposed a greater sanction upon appellee for his misconduct. It is within the trial court's discretion to grant an offended spouse a distributive award or greater share of marital property based upon the financial misconduct of the other party. R.C. 3105.171(E)(3); Huener v. Huener (1996), 110 Ohio App.3d 322; Leister v. Leister (Oct. 23, 1998), Delaware App. No. 97CA-F-07027, unreported, 1998 WL 751457. Upon review of the record, and in light of the lack of prejudice to appellant due to appellee and his father's presentation of $132,875.77 in attempt to return the funds wrongfully expended, we find the trial court did not abuse its discretion when it failed to modify the property division and award an additional $141,000.00 to appellant, as an additional or greater sanction. Lastly, appellant contends that appellee made loans with marital assets and income, which cannot be accounted for by appellee. Specifically, appellant points this court to appellee's admission that he loaned David James, as a part of the Ohio Motor Sales activities, $40,000.00. Transcript at 558, 559. Appellant concludes that this should be considered a dissipation and/or waste of marital funds, especially in light of the evidence that Ohio Motor Sales was an activity in which appellee kept no records and filed no tax returns, and the trial court's finding of financial misconduct regarding the financing of Ohio Motor Sales. The trial court has discretion in determining whether a party has engaged in financial misconduct. R.C. 3105.171(E)(3); Huener, supra. The trial court found that there was financial misconduct in regards to Ohio Motor Sales' and ordered that the loan used to finance Ohio Motor Sales be awarded as appellee's separate responsibility. We find that the trial court did not abuse its discretion or error in failing to find appellee's conduct in regards to the loan to James to be financial misconduct in light of the trial court's finding of general financial misconduct and award of the $141,000.00 Ohio Motor Sales loan to appellee as separate property. Appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error, appellant contends that the trial court's judgment as to the nature and extent of marital property and the division of the marital property and debt was error, an abuse of discretion, not supported by the evidence and against the manifest weight of the evidence. As stated previously, we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. However, with the enactment of R.C. 3105.171, the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. Chase-Carey v. Carey (Aug. 26, 1999), Coshocton App. No. 99CA1, unreported, 1999 WL 770172; See, McCoy v. McCoy (1995), 105 Ohio App.3d 651,654, 664 N.E.2d 1012; Kelly v. Kelly (1996), 111 Ohio App.3d 641,676 N.E.2d 1210. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. R.C. 3105.171(D); Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Id. We will address each disputed item in turn and apply the appropriate standard of review, dependent upon the issue raised: 1. Shareholder loans on the books of Ohio U-Drive It, Inc. Appellant argues that, assuming arguendo, the trial court was correct that both Ohio U-Drive It, Inc. and the appreciation in value of Ohio U-Drive It, Inc. are the separate property of appellee, the trial court erred in not determining that $96,536.00 of shareholder loans allegedly owed to appellee from Ohio U-Drive It, Inc. were marital property. Appellant cites this court to a portion of the record that demonstrates that appellee acknowledged that his financial statement reflected that Ohio U-Drive It, Inc. owed appellee $96,536.00. Tran. at 371. First, we note that the trial court did not find that the appreciation in the value of Ohio U-Drive it, Inc. was the separate property of appellee. Rather, the trial court found that while Ohio U-Drive it, Inc. was the premarital separate property of appellee, some portion of the value of the stock of the company would have become marital property if the value of the stock went up during the marriage. However, the trial court concluded that the value of the stock decreased during the marriage. Thus, since there was no appreciation in value, there was no marital property resulting from such an appreciation. Second, appellee acknowledged that on the personal finance statement, dated June 13, 1997, he had reported that Ohio U-Drive It, Inc. owed him $96,536.00. Id. Appellee also testified that payments made to him from Ohio U-Drive It, Inc. on this loan were applied to the parties' home equity debt to reduce that debt. Trans. at 222 232. Appellee further testified that the balance owed to him as of the hearings, was $21,600.00. Trans. at 233. We find that the trial court's finding that Ohio U-Drive It, Inc. owed appellee $21,600.00 was supported by the evidence and was not against the manifest weight of the evidence. 2. $21,600.00 receivable from Ohio U-Drive-It, Inc. Appellant contends that the trial court erred when it included the sum of $21,600.00 as a marital asset when, pursuant to the argument above in section 1 of this assignment of error, the funds owed to appellee by Ohio U-Drive-It, Inc. was $96,000.00 rather than $21,600.00. We find this argument has no merit based upon our analysis in assignment of error III, Section 1. 3. Merrill Lynch Account Appellant argues that the trial court failed to award the Merrill Lynch account, valued at $9,500.00, to her as separate property. Appellant contends that the account was separate property since it consisted of personal injury proceeds of appellant from her settlement of a personal injury claim. With the enactment of R.C. 3105.171, the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. See, McCoy v. McCoy (1995),105 Ohio App.3d 651, 654, 664 N.E.2d 1012; Kelly v. Kelly (1996),111 Ohio App.3d 641, 676 N.E.2d 1210. R.C. 3105.171 provides, in pertinent part: (A)(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: * * * (vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets; (b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 709 N.E.2d 208. Appellee testified that she received $11,618.34 in settlement of a civil claim against Dalcron. Appellant thought appellee would have had a claim as her husband, but could not remember whether the check for $11,618.34 included a settlement to her husband for a consortium claim. Tran. 49 — 50. We note that any settlement issued to appellee would not be the separate property of appellant. Appellant testified that she believed that she used the proceeds from the claim as a down payment for their house in Florida. Tran. at 48. Near the time of the settlement, the parties went on a cruise. Appellant could not recall whether she used any of the settlement funds to pay for that cruise. Tran. at 49 — 50. Later, appellant testified that the settlement funds were the funds in the Merrill Lynch account. Tran. at 1136. Appellant testified that "I gave the money to Michael, Michael gave the money back to me. I put the money in the Merrill Lynch account. . . .". At the time of the final hearing, the Merrill Lynch account contained $9,500.00. Comingling of separate property with other property of any type destroys the identity of the separate property if the separate property is not traceable. R.C.3105.17(A)(6)(b). We find that the trial court did not commit error when it failed to find the Merrill Lynch account to be the separate property of appellant. Appellant testified that the proceeds were used to purchase the home in Florida, a marital asset. At that point, the funds were comingled in a marital asset. Further, appellant could not remember whether any of her settlement funds were used to pay for a cruise. Appellant's testimony fails to sufficiently demonstrate that the money given to her by appellee can be traced and identified as the proceeds from the personal injury claim. Likewise, appellant thought that appellee participated in the claim as appellant's husband but could not identify whether any of the $11,618.34 proceeds were awarded to him. We find that the trial court's decision is supported by sufficient, credible evidence and agree that appellant failed to satisfy the burden to trace the funds in order to maintain their identify as separate property. 4. $4,641.00 of unaccounted monies was not charged to appellee Appellant argues that although the trial court ordered that $4,641.00 of unaccounted funds from the Merrill Lynch account be charged to appellee, the balance sheet setting forth the division of property, appended to the Judgment Entry, failed to include those funds. We find this argument meritless. The trial court found that, at the time of filing, the account balance in the Merrill Lynch account was $7,841.00. Two thousand dollars was taken from the account to pay for part of the business valuation. However, at the time of trial, the account balance was $1,200.00 which left an unaccounted for total of $4,641.00. The trial court ordered that the unaccounted for funds be charged to appellee. The balance sheet reflects that appellee was awarded the Merrill Lynch account at a value of $5,841.00. Because the account actually held only $1,200.00, appellee was charged with the unaccounted for funds. We find no error. 5. $18,500 Gordon Winston Debt Appellant contends that the trial court erred when it found that the current remaining balance on two notes, originally totaling $25,000.00, used to finance Ohio Motor Sales, was a marital debt. Ohio Motor Sales was a sole proprietorship used car business operated by appellee. Appellant contends that since the trial court found that the $141,000.00 business line of credit used to finance Ohio Motor Sales was financial misconduct on the part of appellee, it was error to find that the $18,500.00 debt was a valid marital debt. We disagree. The debt was entered into during the marriage by appellee, for the sole proprietorship, Ohio Motor Sales, and was evidenced by notes payable to Gordon or Oralia Winston. Appellee testified that these notes had been paid down to $18,500.00. Appellee testified that the $18,500 went to finance Ohio Motor Sales. In contrast, the trial court found that appellee could not give a satisfactory explanation of where the $141,000 went. As a matter of fact, the Magistrate's Decision says that "[t]he word `evasive' does not begin to describe the Plaintiff's explanation of what became of this $141,000." The trial court determined that, therefore, the $141,000 should be the separate debt of the appellee. We can easily understand why the trial court handled each of these debts differently. The evidence supports that the $18,500 was used in the normal course of business conducted during the parties' marriage. The evidence also supports that the destination of the $141,000 was and is a mystery. We find the trial court's determination is supported by sufficient, credible evidence and is not against the manifest weight of the evidence and is not an abuse of discretion. 6. Appellant's debts and medical bills Appellant contends that the trial court should have included appellant's medical, dental and credit debt, totaling $8,811.13, in the division of marital property and debt. Appellant argues that all of these bills should have been paid and satisfied during the pendency of the case since the temporary order required appellee to maintain payments upon all marital debt. Appellant cites this court to the list as provided to the trial court with appellant's Objections to the Magistrate's Decision. Appellant does not argue that these debts were presented to the Magistrate nor cite this court to portions of the record which demonstrate these items were presented to the Magistrate. Therefore, we conclude these items were not presented to the Magistrate. When a trial court is presented with additional evidence which has not been proffered at the Magistrate's hearing, the trial court may refuse to consider that evidence unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the Magistrate's consideration. Appellant presented no evidence nor argument that these bills and debt could not have been produced for the Magistrate's review. Further, six days of hearings were held in this case extending over a three month period, and yet these debts and bills were not presented. Lastly, we note that the exhibit presented to the trial court through appellant's Objections to the Magistrate's Decision which listed these debts and bills did not include the date on which the debts were incurred, explanation as to what these debts were from nor a copy of the debt or bill itself. Under these circumstances, we find the trial court did not abuse its discretion in refusing to consider this additional information nor in failing to include these debts in the division of martial property and debt. 7. The Providian credit card account Appellant argues that it was an abuse of discretion for the trial court to require appellant to pay a marital credit card debt from a cash advance taken by appellant for her own expenses on September 5, 1997, when appellee was ordered, through a temporary order, to pay all marital debts as they arose prior to the final hearing. We disagree. Appellant was unable to account for the use of these funds other than to say that she had to have money to live on and that they were used for items such as medications and acupuncture. This $5,000.00 was in addition to a $9,500.00 cashier's check appellant received from the Providian Bank on August 30, 1997. Appellant could not account for nor trace the use of the $5,000.00 cash advance. We find that the trial court did not abuse its discretion when it found that this debt was not a marital debt and awarded it to appellant. 8. Escrow Account for Taxes From Sale of Northfield Auto Auction Corp. Stock The trial court estimated that the Northfield Auto Auction Corp. stock had a fair market value of $144,000.00. The trial court set aside $26,300.00 to be held in escrow to pay anticipated capital gains taxes and awarded appellee and appellant the remaining proceeds as follows: $73,138 to appellee ($22,643 of which is then payable to appellant from appellee). Any remainder is to be divided equally between the parties. Subsequent to the hearing but prior to the submission of appellant's objections to the Magistrate's Decision, the stock was transferred to Gordon Winston and sold by Gordon Winston. The resulting proceeds totaled $148,897.20. Evidence of the sale of the stock and the sales price was submitted by appellant with her Objections to the Magistrate's Decision. Appellant contends that since the proceeds from the sale of the stock were never received by appellee, there will be no tax consequences to appellee. Appellant asserts that Gordon Winston, to whom the stock was transferred and the person who subsequently sold the stock, will bear the tax consequences. Appellant contends that the trial court abused its discretion in failing to award the entire $148,897.20 to appellant as a sanction against appellee for his egregious financial misconduct throughout the marriage and during the pendency of this matter. However, appellant argues that even if we reject her argument that she should be awarded the entire $148,897.20, the property division should have been reconfigured due to the lack of capital gains taxes to be paid by appellee on the sale of the stock. We find that the trial court did not abuse its discretion in failing to award the entire value of the stock to appellant as a sanction. In regard to the capital gains tax, the trial court understood that the value of the stock and the amount of anticipated taxes were speculative and drafted the Final Decree so as to accommodate and award any funds remaining after payment of taxes and payments of specific awards to the parties. Even if appellant is correct that no tax consequences will now accrue to appellee as a result of the transfer of the stock to Gordon Winston, the trial court's order states that after certain specified payments to the parties, the remainder will be divided equally between the parties. Therefore, there was no need to reconfigure the property division due to the possible reduction in the amount of capital gains taxes to be paid by appellee. If less money from the proceeds is needed to pay the taxes, the appellant and appellee will be splitting the additional available monies. 9. Misstated value of the Lake Cable real estate Appellant contends that the division of marital property should have been corrected to reflect the actual sale price of the Lake Cable real estate and that the $11,000.00 difference between the estimated and actual sale price was divided among the parties. We find no merit in this argument. The balance sheets setting forth the division of property and appended to the Judgment Entry reflect that the speculative value of the property was $210,000.00. The final decision of the trial court orders that both parties share the sale proceeds equally following payment of the mortgages on the property and the first mortgage on property in Florida. Therefore, regardless of any difference between the estimated or actual sale price, the parties will each receive equal shares of the sale proceeds. 10. Miscellaneous personalty Appellant contends that appellee negotiated for the removal of a $3,000.00 hot tub as part of the sale of the Lake Cable real estate. Appellant submits that this hot tub was not factored into the property division. Appellant first presented evidence regarding the removal of the hot tub with her Objection to the Magistrate's Decision. Appellant presented the trial court with a copy of the Purchase Agreement and Addendum. The Addendum states that $3,000.00 will be withheld from closing and held in escrow until the hot tub is removed and any necessitated repairs completed. Upon completion of the repairs, the funds were to be paid to the sellers (appellee and appellant). Appellant presented no evidence regarding the negotiation of the addendum or any evidence as to what happened to the hot tub after removal or any evidence of the value of the hot tub. It actually appears from the Addendum that the hot tub had a negative value to the buyers as the buyers wanted it removed from the property before the buyers would pay the purchase price. In other words, the property was worth less to the buyers with the hot tub on it than with the hot tub off of it. As discussed in assignment of error II, Civ.R. 53(E)(3)(b) states: Disposition of objections. The court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the Magistrate's consideration. Based upon the lack of evidence and information presented by appellant regarding the hot tub, we find the trial court did not abuse its discretion in failing to sustain appellant's Objection and in failing to award appellant a portion of the "proceeds" from the hot tub. Appellant contends further that she wanted the Jen Air stove and exercise equipment located at the Lake Cable property, and the trial court failed to award them to her. However, upon review of the record, we disagree. The transcript reflects that appellant testified that she wanted these items if she were awarded the Lake Cable property. Appellant was not awarded the Lake Cable property, therefore, we find the record does not reflect that, under the circumstances, appellant requested that she be awarded these items. We find no abuse of discretion. Lastly, appellant avers that the trial court abused its discretion when it awarded appellant the leased car in her possession rather than awarding her the 1997 Toyota Forerunner she had formerly been driving or a comparable vehicle and when it failed to award appellant one-half of the proceeds of a pontoon boat. We disagree. Testimony showed that the1997 Toyota Forerunner and the pontoon boat were owned by Ohio U-Drive-It, Inc. even though they were for appellant's and appellee's private use. Appellant had been driving the Toyota for her personal use in Florida. Upon appellee's motion, the Magistrate ordered that appellee was permitted to retrieve the Ohio U-Drive It, Inc.'s car being used in Florida, as long as appellee provided a car for appellant's use. Magistrate Order/Decision, filed December 2, 1997. Ultimately, the Forerunner as well as the pontoon boat were sold. After the retrieval of the Forerunner, appellant was provided with a 1996 Buick Century automobile that was in good shape with which appellant had experienced no difficulties, with the exception of a battery problem. Tran. at 1291-1292. Appellant was awarded this Buick Century. In regard to the proceeds of the pontoon boat, appellant was not awarded any of the proceeds from its sale. We find that the trial court did not abuse its discretion in awarding appellant the leased car she was driving at the time of the hearing. Further, we find that the trial court did not err in failing to award appellant half of the sale proceeds of the pontoon boat. The boat was a corporate asset. The trial court considered the value of the Ohio U-Drive-It, Inc. assets in deciding if it held any marital property value to be divided between the parties. The trial court found that the company had existed prior to the marriage and that it had not increased in value over the time of the marriage, thereby concluding that no corporate assets were marital property. We find the trial court's decision as to the pontoon boat was supported by the evidence and not against the manifest weight of the evidence. 11. 1997 income tax refund check Appellant argues that during the pendency of the action, appellee received the parties' 1997 income tax refund check in the amount of $1,669.00 and appellee failed to deposit it into the parties' account. Appellant contends that appellant should have received one-half of the refund or $834.50. The trial court addressed appellee's failure to deposit the 1997 income tax refund check into the joint account, as well as other instances in which appellee violated court orders in regards to financial matters. The trial court noted that, in an October 21, 1997 Magistrate Order, each party was given the right to receive $75.00 per week for personal expenses, but appellee had not cashed any of the $75.00 expense allowance checks because there was not enough money in the account. Since the appellee had failed to deposit the tax refund into the parties' joint account, the trial court ordered that appellee not be granted the right to cash any of the $75.00 per weekly cash expense allowance checks issued to appellee. In other words, the appellee was not going to receive the $75.00 per week "allowance" from the joint account that he had not taken when he was entitled to it, because appellee had kept the tax refund money he should have deposited into that joint account. We find the trial court did not abuse its discretion by handling appellee's misconduct regarding the tax refund in this manner. In conclusion, upon review of appellant's contentions presented in assignment of error III, numbered 1 — 11, we find that the trial court did not abuse its discretion or err and that the judgments were supported by the evidence and not against the manifest weight of the evidence.
 IV
In her fourth assignment of error, appellant contends that the judgment of the trial court finding Ohio U-Drive-It, Inc. to be the separate property of appellee and the findings as to the fair market value of appellee's interest on Ohio U-Drive-It, Inc. are contrary to law, constitute an abuse of discretion, are not supported by the evidence and are against the manifest weight of the evidence. We disagree. The characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. Chase-Carey v. Carey (Aug. 26, 1999), Coshocton App. No. 99CA1, unreported, 1999 WL 770172; See, McCoy v. McCoy (1995), 105 Ohio App.3d 651, 654, 664 N.E.2d 1012; Kelly v. Kelly (1996), 111 Ohio App.3d 641, 676 N.E.2d 1210. Further, as to appellant's arguments that the findings are against the manifest weight, judgments supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. C.E. Morris v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261376 N.E.2d 578, syllabus. Section 3105.171 of the Ohio Revised Code, in pertinent part, defines "marital property" and "separate property" as follows: (3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
 (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage; . . . (6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage; . . . (b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
The trial court's decision that Ohio U-Drive-It, Inc. was the separate property of appellee was supported by sufficient, credible evidence. The testimony showed that appellee's father, Gordon Winston, gave appellee a gift of 37 shares of stock in Gordon Winston's company, Ace-U-Drive-It, Inc., prior to the parties' marriage. Tran. 653-654. Therefore, since this property was acquired by appellee prior to the marriage, the stock was the separate property of appellee. See R.C. 3105.171(A)(6)(a)(ii). In 1987, Gordon and appellee entered into a business reorganization. Appellee established a wholly owned corporation, Ohio U-Drive-It Company, Inc. Appellee redeemed the stock in his father's company for assets and liabilities which were transferred to appellee's corporation named Ohio U-Drive-It, Inc. Tran. 663-664. Tran. 162-163. The evidence was sufficient for the trial court to trace the property given to appellee by his father, in the form of Ace U-Drive-It, Inc. stock, to the formation of Ohio U-Drive-It, Inc. As to the valuation of Ohio U-Drive-It, Inc., appellant contends that the trial court erred in determining the fair market value of appellee's interest in Ohio U-Drive-It, Inc. Appellant argues that had the trial court correctly determined the value of Ohio U-Drive-It, Inc., the court would have had to determine whether the appreciation in value was marital or separate property. We find that the trial court's determination of value of Ohio U-Drive-It, Inc. was supported by sufficient, credible evidence. Testimony showed that when Ohio U-Drive-It, Inc. was formed, it had a lease portfolio valued at approximately $80,000.00, a parts inventory worth between $30,000.00 and $50,000.00 and other fixed assets worth between $15,000.00 and $20,000.00. Tran. 663-664. Therefore, the trial court found that at the time of formation, Ohio U-Drive-It, Inc. was valued between $130,000.00 and $150,000.00. We find no error and that the determination of Ohio U-Drive-It, Inc. at its formation was supported by competent, credible evidence and not against the manifest weight of the evidence. As to any marital appreciation in the value of Ohio U-Drive-It, Inc. between the date of marriage and the 1987 reorganization, Gordon Winston testified that he believed the value of the corporation had decreased during that time. Gordon testified that this reduction in value was the very reason that he suggested the 1987 reorganization. Tran. 660. No evidence was presented to contradict Gordon Winston's testimony. The evidence presented at trial further demonstrated that there was no increase in the value of Ohio U-Drive-It, Inc., from the date of the corporate reorganization in 1987 and from the date of the final hearing. Appellee's expert, Michael Zelenik, valued Ohio U-Drive-It, Inc. at the time of the divorce at $79,000.00. While the appellant's expert, Michael Eberhard, testified that the value of Ohio U-Drive-It, Inc. was $232,000.00, the trial court discounted Eberhard's opinion, finding that Mr. Zelenik's method of evaluation was more appropriate than Mr. Eberhard's method. Therefore, the trial court found the value of Ohio U-Drive-It, Inc. to be $79,000.00. Thus, the trial court concluded that there had been no marital appreciation by Ohio U-Drive-It, Inc. Appellant contends Mr. Zelenik was a biased witness because he is employed by Ohio U-Drive-It, Inc.'s former accounting firm and, in part, based his valuation on the word of appellee. The value of the company was in part based upon whether a particular lease was open-ended or close-ended. Appellee's expert was able to review the contracts held by appellee to make this determination, but admitted that in cases in which the bank held the contract, the expert had to rely on the notation on the file as to which type of lease it was. These notations had been made by appellee. Further, while appellee admitted he had misstated the value of his company in the past, these were overvaluations of the company to obtain loans, not undervaluations. We find that the trial court's findings are based upon competent, credible evidence and not against the manifest weight of the evidence. In conclusion, we find that the trial court's findings regarding whether Ohio U-Drive-It, Inc. was the separate property of appellee and the findings as to the value of appellee's interest in Ohio U-Drive-It, Inc. are not contrary to law, an abuse of discretion, are supported by the evidence and are not against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.
 V
In the fifth assignment of error, appellant contends that the trial court committed reversible error and abused its discretion when, as a further sanction for appellee's misconduct, or pursuant to R.C.3105.18(H), failed to order the appellee to pay all of appellant's attorney fees and litigation expenses. We disagree. The standard of review for the award of attorney fees and litigation expenses is abuse of discretion. Arthur v. Arthur (1998), 130 Ohio App.3d 398, 411,720 N.E.2d 176. (citing Motorist Mut. Ins. Co. v. Brandenburg (1995),72 Ohio St.3d 157, 648 N.E.2d 488. R.C. 3105.18(H) provides, in pertinent part: (H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees. R.C. 3105.18(H).
As an initial matter, we note that the trial court failed to make the requisite findings, pursuant to R.C. 3105.18(H), when it awarded partial attorney fees to appellant. In the case sub judice, the trial court ordered appellee to pay attorney fees in the amount of $18,500.00, including $500.00 related to the finding of contempt against appellee. The trial court found that the "[appellant] is unable in her current circumstances to fully pay her legal fees" and ordered that appellee pay these legal fees "from the proceeds of the Northfield Auto Auction Corp. stock sale." Appellant argues that the trial court abused its discretion in only awarding partial attorney fees and failing to order appellee to pay all of the litigation expenses of appellant because appellant incurred $5,270.00 of accounting fees at the specific request of the Magistrate who heard the matter and that the overall accounting fees incurred by appellant were due to appellee's "shoddy record keeping". The trial court found that the legal fees in the case were "very high". However, the trial court found that both appellant and appellee contributed to the high costs. The trial court noted that appellee's business records and evasiveness contributed to the high attorney fees as did appellant's expressed mistrust of her counsel, causing counsel to introduce extensive testimony and documentary evidence to cover each and every possible contingency. Upon review of the record and the trial court's findings, we find that the trial court did not abuse its discretion in awarding appellant $18,500.00 in attorney fees and failing to award additional attorney fees as a sanction. Further, pursuant to R.C. 3105.18(H), we find the trial court did not abuse its discretion in its award of attorney fees. Appellant's fifth assignment of error is overruled. The judgment of the Stark County Court of Common Pleas is affirmed. By Edwards, J. Gwin, P.J. concurs Wise, J. concurs in judgment only
I concur in the result reached by the majority. Based upon Briganti v. Briganti (1984), 9 Ohio St.3d 220, I find the property division in its entirety does not constitute an abuse of discretion.
 _____________________ Edwards, J.
JUDGE W. SCOTT GWIN