DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the August 3, 2004 decision of the Lucas County Court of Common Pleas, Domestic Relations Division, which, following a remand from this court, determined that appellant/cross-appellee, Susan M. Hanna, was entitled to $31,433.30, representing her marital interest in an investment account. For the reasons set forth below, we affirm the trial court's decision.
 {¶ 2} A brief overview of the facts is as follows. Appellant, Susan Hanna, and appellee/cross-appellant, David Hanna, were married on July 29, 1995. On August 13, 1999, appellant filed a complaint for divorce. Following a trial on the matter, held on April 20 and June 15, 2001, the trial court issued its November 7, 2001 judgment entry of divorce. The judgment, inter alia, granted appellee the balance of the funds held in an investment account by Continental Capital Securities, Inc. ("Continental").
 {¶ 3} On appeal, this court determined that appellee failed to establish, by a preponderance of the evidence, the amount of the Continental account that remained his separate property. See Hanna v.Hanna, 6th Dist. No. L-01-1446, 2003-Ohio-1401 ("Hanna I"). On remand, at a hearing held on July 7, 2004, the parties each presented expert testimony to establish the amount of the Continental account that remained appellee's separate property, and the amount to be considered marital property, subject to division. Appellant timely appealed the court's August 3, 2004 judgment awarding her $31,433.30 of the account.
 {¶ 4} Appellant now raises the following assignment of error:
 {¶ 5} "1. The Court erred in finding the Defendant's expert testimony persuasive, as opposed to the Plaintiff's, and thereby determining that the Plaintiff was entitled to Thirty-One Thousand Four Hundred Thirty-Three Dollars and 30/100 ($31,433.30) as opposed to One Hundred Eighty Eight thousand Four hundred fifty three and Twenty seven cents ($188,453.27)."
 {¶ 6} Appellee raises the following assignment of error on cross-appeal:
 {¶ 7} "The trial court's determination, on remand, that the beginning valuation date for the division of property was September of 1995, is against the manifest weight of the evidence."
 {¶ 8} Appellant's sole assignment of error concerns the trial court's determination that appellee's expert's methodology in tracing the Continental funds was more credible than appellant's experts' testimony. Appellee's assignment of error dispute the trial court's assignment of September 1995, as the beginning valuation date for the division of the property. Because the alleged errors are interrelated, they will be jointly discussed.
 {¶ 9} We first note that an appellate court reviews the trial court's factual determination of whether property is marital or separate property based on a manifest weight of the evidence standard. Carpenter v.Carpenter, 6th Dist. No. WD-01-028, 2002-Ohio-526, at ¶ 11, citing Kellyv. Kelly (1996), 111 Ohio App.3d 641, 642. Accordingly, the judgment of the trial court will not be disturbed on appeal if supported by some competent, credible evidence. Fletcher v. Fletcher (1994),68 Ohio St.3d 464, 468. Further, the party seeking to have certain property deemed separate has the burden of proof by a preponderance of the evidence. Okos v. Okos (2000), 137 Ohio App.3d 563, 570.
 {¶ 10} As we stated in Hanna I, in a divorce proceeding, a trial court is responsible for determining what constitutes separate and marital property; the court must then equitably divide the property in accordance with R.C. 3105.171. In determining the nature of the property, expert testimony is admissible if it will assist the trier of fact in understanding the evidence or determining a fact at issue. Tolliver v.Tolliver (Jan. 22, 1991), 12th Dist. No. CA90-07-015, citing Evid. R. 702. However, "[t]he finder of fact is the sole weigher of credibility of witnesses and testimony and can accept all, part or none of the testimony offered by a witness, whether the testimony is expert or not." (Citation omitted.) Breslau v. Breslau (June 14, 1999), 8th Dist. No. 56996. See, also, Tolliver, supra.
 {¶ 11} In the present case, at the July 7, 2004 hearing, appellee presented the expert testimony of Garth Tebay, a certified public accountant and certified valuation analyst; Tebay was also certified in mergers and acquisitions. Tebay testified that in determining what part of the Continental account remained appellee's separate property, he traced every transaction from July 30, 1995, through June 15, 2001. Tebay testified that the methodology he used is supported by professional literature and case law. Tebay indicated that the income earned and the expenses deducted from the account from July 30, 1995 through February 26, 1996, were nonmarital. Tebay stated that this is so because appellee did not begin to actively manage the account until February 27, 1996. In sum, applying the court ordered disbursements, Tebay concluded that appellee's share of the account totaled $650,000, and that appellant actually owed the account $18,022.59.
 {¶ 12} During cross-examination, Tebay conceded that a decision whether or not to sell a stock would be considered management of the account. During re-direct examination, Tebay commented that the July 28, 1996 date appellant's expert used to begin tracing the account had no logical basis. Tebay testified that the account, as it had in July 1996, had dropped below the starting value on several different occasions and that this unrealized loss had no economic impact on the separate or marital assets in the account.
 {¶ 13} The trial court then asked Tebay what the effect would be if the court were to determine that the initial sale and re-purchase of the Ford stock beginning in September 1995, were considered active, rather than passive, management. Tebay responded that it transferred $45,455 from appellee's separate property to appellant's marital property; or, in other words, appellant would be entitled to one-half of the $98,911.77 earned during that period.
 {¶ 14} Appellant's first expert, James Coco, a certified public accountant, testified that he was instructed as to which method to use in tracing the account. Coco testified that his analysis was based on paragraph 28[1] of this court's prior decision. Coco testified that it did not matter whether the gains were realized or unrealized, and he began tracing the account at its July 1996 balance of $237,000, rather than the actual beginning balance of $563,000. Coco testified that a transaction by transaction tracing would be inefficient. Coco testified that according to his analysis appellant was owed $188,453.27 from the account.
 {¶ 15} David Kelley testified that he is a co-manager at Pension Evaluators which, inter alia, traces defined contribution plans. Kelley testified that they did not trace each and every transaction in this case "[b]ecause of the direction of the court of appeals." Kelley analogized an attempt to trace all transactions as trying to trace an ice cube after it has melted. Kelley stated that he began at the $237,000 amount and then traced it to what the account became.
 {¶ 16} During cross-examination, Kelley was questioned regarding the basis for his belief that paragraph 28 of Hanna I directed them to begin the valuation in July of 1996. Kelley did acknowledge that under most conditions the appropriate method to determine separate property is by tracing each and every transaction in the account. Kelley admitted that if it were not for the appellate court's decision, he would hold the tracing method "open as a possibility." Kelley testified that the transaction could be individually traced and that appellee's expert, Garth Tebay, did an "excellent" job.
 {¶ 17} In its August 3, 2004 judgment entry, the trial court concluded that it was more persuaded by Tebay's testimony. The court noted that his analysis was based upon the actual documents and a transaction by transaction examination. The court also noted that this method was advanced by appellant's trial expert, Dr. Douglas Austin. However, unlike Tebay's analysis in which he determined that active management of the account began in February 1996, the court concluded that active management began in September 1995, the initial sale date of the Ford stock. Thus, the court added the additional appreciated amounts and determined that appellant's share was $31,433.30.
 {¶ 18} Reviewing the Hanna I decision and the additional trial court proceedings, we cannot say that the trial court abused its discretion when it rejected appellant's experts' testimony and accepted, in part, appellee's expert's testimony. We do not subscribe to appellant's assertion that Hanna I dictated the method to be used in tracing the separate and marital property in the account. The account balance set forth in paragraph 28 simply underscored the fact that appellee failed to properly trace his separate property. Moreover, in paragraph 25 of our decision, we note that appellant's expert, Dr. Douglas Austin, testified at trial that "it was necessary to `start with the very first transaction and go transaction by transaction' for the entire period of time `to see exactly what the ending dollars actually arose from * * *.'" Additionally, we conclude that the trial court, in its August 3, 2004 decision, very thoroughly explained its findings. Based on the foregoing, we find that appellant's assignment of error is not well-taken. We further find that appellee's cross-assignment of error is not well-taken.
 {¶ 19} On consideration whereof, we find that substantial justice was done the parties complaining, and the judgment of the Lucas County Court of Appeals, Domestic Relations Division, is affirmed. Appellant and appellee are each ordered to pay one-half of the cost of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J., concur.
[1] Paragraph 28 of Hanna I provides:
"As noted above, after the entire $563,480.68, representing appellee's separate pre-marital property, had been deposited into the Smith Barney account and after the parties had deposited $74,123 of marital funds, the value of the Smith Barney account dropped to $237,981.20 in July 1996. The value of the Smith Barney and Continental accounts were eventually brought back up with marital funds, to wit, income and appreciation on the accounts through appellee's labor, in monitoring and managing the account, and through contributions of marital funds. Nevertheless, in July 1996, from the point at which the value of the Smith Barney account dropped below the amount of appellee's pre-marital contributions, appellee was no longer entitled to the full $563,480.68, as some portion of this amount already had been lost by him while playing the stock market."