OPINION
{¶ 1} This appeal is brought by Appellant Kristen A. Warner from the judgment of the Court of Common Pleas, Union County, Domestic Relations Division affirming the shared parenting plan proposed by Appellee Richard A. Warner and ordering Appellant to pay child support.
 {¶ 2} Kristen and Richard Warner were married on July 6, 1996. One child was born during the marriage, Kyle Adam Warner, born January 6, 1999. On May 10, 2002, Kristen filed a Complaint for Divorce, asking to be named the residential parent of the parties' minor child. On May 18, 2002, Richard filed an Answer and Counterclaim and made a request for adoption of a shared parenting plan. The shared parenting plan proffered by Richard named both parents as residential parents for the child. On June 27, 2002, the magistrate ordered that Kristen be designated the residential parent of Kyle. Richard was given parenting time in accordance with the Union County Standard Order of Visitation. In addition, the order required Richard to pay Kristen child support in the amount of $437.24 per month. Richard's work requires him to be out of the state frequently on business trips, which, on average, is 57 percent of the time.
 {¶ 3} At the final hearing, Kristen indicated that she was willing to cooperate with Richard, however, she was unwilling to agree to the shared parenting plan. The magistrate adopted the shared parenting plan despite Kristen's objections and reserved ruling on the issue of child support. On October 17, 2002, the magistrate rendered her decision affirming the proposed shared parenting plan and ordering Kristen to pay child support to Richard. On October 31, 2002, Kristen filed objections to the magistrate's decision. On January 21, 2003, the court rendered a decision overruling the objections. On March 5, 2003, a decree of divorce was filed with the court. It is from this order that Kristen now appeals.
 {¶ 4} Kristen raises the following five assignments of error:
The trial court abused its discretion when it failed to consider the disruptive effect upon the plaintiff-appellant and the child in implementing the shared parenting plan.
The trial court erred in failing to follow the procedure in amending a shared parenting plan.
The trial court failed to deviate the child support based upon naming each party as residential parent.
The court erred in failing to consider the potential income of the appellee.
The magistrate failed to consider the premarital nature of the tennis bracelet.
 First Assignment of Error {¶ 5} Kristen contends that the trial court failed to consider the potential disruptive effect of implementing the shared parenting plan and that this alleged failure on the part of the trial court was an abuse of discretion.
 {¶ 6} When making the allocation of parental rights and responsibilities for the care of children under R.C. 3109.04, the court must take into account that which would be in the best interests of the children. R.C. 3109.04(B)(1). In determining the best interest of a child pursuant to R.C. 3109.04, the court must consider all relevant factors, including, but not limited to the factors listed under R.C.3109.04(F)(1)(a)-(j) and in determining whether shared parenting is in the best interests of the child, the court must consider the factors listed under R.C. 3109.04(F)(2)(a)-(e) along with R.C.3109.04(F)(1)(a)-(j).
 {¶ 7} Kristen argues that the shared parenting plan requires her to turn over the child to Richard each and every time he comes back from a business trip and to contact Richard on his cellular phone, at whatever location, to make parental decisions. Due to Richard's work schedule, he is out of town approximately 57 percent of the time. Kristen argues that the court ignored the necessity of the child to have routine visitation and consistency and the court acted in an arbitrary and unreasonable manner in implementing the shared parenting plan. However, Kristen is unable to show how the trial court abused its discretion in implementing the shared parenting plan.
 {¶ 8} A trial court's decision in custody matters will be reversed only upon a showing of an abuse of discretion. Trickey v. Trickey
(1952), 158 Ohio St. 9, 106 N.E.2d 772. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. When an award of custody is supported by some competent, credible evidence, that award will not be reversed by a reviewing court as being against the weight of the evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,550 N.E.2d 178. When there is no evidence to the contrary, an appellate court will presume that the trial court considered all the relevant factors. In re Burdine (May 2, 1994), Ohio App. 12th Dist. No. CA93-08-009, 1994 WL 160303.
 {¶ 9} A review of the record in this case reveals no evidence that the trial court failed to consider all the factors. To the contrary, the record indicates that the trial court took into consideration that the parties were cooperating and abiding by the shared parenting plan before the trial court implemented the plan.
Plaintiff is not in favor of Defendant's Proposed Shared Parenting Planbecause Defendant travels a lot with his job at American Jersey CattleAssociation. Currently, Defendant provides Plaintiff with a copy of hisschedule so the parties can plan when Defendant will have parenting timewith Kyle. This schedule has worked out well for the parties to the pointthat the parties went on vacation together with Kyle and had a greattime. Plaintiff now states that she doesn't want to continue thisschedule in the future because she doesn't want her life to be dependenton Defendant's schedule. However, the Court needs to consider what is inthe best interests of the parties['] child, not what is in the bestinterests of a parent.
 Magistrate's Decision, Oct. 17, 2002, p. 3. {¶ 10} In addition, there is insufficient evidence in the record to show that the shared parenting plan would result in disruption in the child's life or that any factors contributing to disruption were not considered by the trial court. There was no evidence presented on the record that the child was involved in any regularly scheduled activities or that Richard would not facilitate the child in any such participation in future activities. The parties live a short distance from each other and the evidence on the record shows that the parties had no problems with transporting the child from one party's residence to the other. We find that the magistrate's decision to accept the proposed shared parenting plan was reasonable and supported by evidence at the hearing. Therefore, the first assignment of error is overruled.
 Second and Third Assignments of Error {¶ 11} In her second assignment of error, Kristen argues that the trial court erred in the procedure of amending the shared parenting plan regarding child support. In the third assignment of error, Kristen argues that the trial court failed to deviate from the guideline child support based upon each party being named as a residential parent. We take these two assignments of error together, as they address the same issue.
 {¶ 12} Kristen argues that the trial court unilaterally made modifications of the shared parenting plan regarding the obligation of child support without consulting the parties or suggesting that the parties submit modifications. Kristen contends that the trial court cannot make changes to the shared parenting plan on its own accord, but must instead make one or both of the parties submit changes. We believe Kristen's argument misapplies the law to the facts in this case.
 {¶ 13} The procedure for adoption of a shared parenting plan is set forth in R.C. 3109.04(D)(1), with specific circumstances covered in that provision's subsections. R.C. 3109.04(D)(1)(iii) states:
If the court determines that one of the filed plans is in the best interest of the children, the court may approve the plan. If the court determines that no filed plan is in the best interests of the children, the court may order each parent to submit appropriate changes to the parent's plan or both of the filed plans to meet the court's objections or may select one filed plan and order each parent to submit appropriate changes to the selected plan to meet the court's objections.
Kristen contends that this section prohibits the court from determining child support in a manner that is different from that reflected in the shared parenting plan without first consulting with the parties. It is true that Ohio law does not permit the trial court to create its own shared parenting plan and impose it upon the parties. Bowen v. Bowen
(1999), 132 Ohio App.3d 616, 725 N.E.2d 1165. However, that proposition of law does not extend to the calculation of child support. R.C. 3119.24
imposes an obligation upon the court to calculate child support pursuant to the requirements of the statute. R.C. 3119.24(A)(1) states:
A court that issues a shared parenting order in accordance with section3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 [ 3119.02.2] of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interests of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.
R.C. 3119.24(A)(1). Therefore, the trial court is not authorized to accept a deviation of child support included in a shared parenting plan until the court independently calculates child support according to the worksheet in section 3119.022 and determines that such deviation would be appropriate. The trial court must follow the procedure outlined above regardless of whether the parties have reached an agreement on their own regarding child support. The Ohio Supreme Court has stated:
The law favors settlements. However, the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to the child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in matters of support.
DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, 540, 679 N.E.2d 266.
 {¶ 14} It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. Pauly v. Pauly (1997), 80 Ohio St.3d 386, 686 N.E.2d 1108. As we noted above, an abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. Blakemore, supra. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.
 {¶ 15} R.C. 3119.02 governs the calculation of a party's child support obligation. It provides that the amount of child support shall be calculated "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to3119.24 of the Revised Code." The basic child support schedule is codified in R.C. 3119.021, which provides the amount of child support to be paid, based upon the combined gross income of the parents. R.C. 3119.022
provides the content and form for the child support computation worksheet applicable to situations where one parent is the residential parent or where the parties have shared parenting. Its provisions are mandatory in nature and must be followed literally and technically in all material respects because the overriding concern is the best interest of the child for whom the support is being awarded. Marker v. Grimm (1992),65 Ohio St.3d 139, 601 N.E.2d 496.
 {¶ 16} There is a "rebuttable presumption" that the amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is the correct amount of child support due. R.C.3119.03. However, the court is authorized by R.C. 3119.22 to order child support in an amount that deviates from the calculation obtained from the schedule and worksheet "if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated * * * would be unjust or inappropriate and would not be in the best interest of the child." Therefore, the court must first determine that the amount of child support calculated from the worksheet would be unjust or inappropriate and not in the best interest of the child before the court could determine to deviate from the calculated amount of child support. Brown v. Brown (Jan. 22, 2003), Ohio App. 9 Dist. No. 02CA0030, 2003-Ohio-239, 2003 WL 150089. In addition, when the court determines that a deviation is warranted, the court must journalize "the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet * * *, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination." R.C. 3119.22. See, also, Paton v. Paton (2001),91 Ohio St.3d 94, 742 N.E.2d 619.
 {¶ 17} In this case, Kristen asserts that she is entitled to a deviation and that the trial court failed to consider deviation. Kristen argues that the court was required to make a specific inquiry as to whether the child support pursuant to the guidelines was unjust or inequitable and failed to do so. As we stated above, the trial court must first find that the child support calculation is unjust or inappropriate before the court can consider deviating from the amount. Even if either party had requested a deviation on the record at the hearing, the trial court would not be permitted to consider a deviation until the court had found that the amount of child support calculated pursuant to the worksheet was unjust or inappropriate and not in the best interests of the child. The trial court did not find any evidence that the amount of child support was unjust or inappropriate. The trial court found on the record that "neither party presented testimony with regard to the ability of each parent to maintain adequate housing for Kyle, extraordinary costs associated with parenting time or significant in-kind contributions." Magistrate's Decision, Oct. 17, 2002, p. 4. As mandated by the statute, the trial court calculated the child support according to the worksheet. "Unless the trial court deviates from this amount, the statute does not require the court to justify its decision." Coleman v. Campbell (July 26, 2002), Ohio App. 11th Dist. No. 94 SU 000223, 2002-Ohio-3841, 2002 WL 1750877, *3.
 {¶ 18} Kristen further argues that trial courts routinely grant deviations in child support calculations in shared parenting situations in which each parent spends long periods of time with the minor children. Kristen then argues that she is entitled to a deviation in child support because she is spending the majority of the time with the child. It appears that Kristen is arguing both sides of the argument; that she is entitled to a deviation because she is the obligor of child support and spends the majority of the time with the child, and that she is entitled to a deviation because both she and Richard spend large periods of time with the minor child. The record shows that Richard is not traveling for his job between four and sixteen days per month, however, the record also shows that when Richard is in town he spends approximately 85 percent to 90 percent of his time with Kyle. Tr. 39. In contrast, the record shows that when Kyle is in the custody of Kristen he is with a day care provider or in the care of his grandparents from 7:30 a.m. until 4:30 p.m., Monday through Friday. Tr. 15. It appears that the parties spend fairly equal time with Kyle.
 {¶ 19} Kristen argues Fitzgerald v. Fitzgerald (Jan. 24, 1997), Ohio App.2d Dist. No. 15982, 1997 WL 24807, as authority that this court must hold that the trial court erred in not deviating from the calculated child support amount. However, the facts in Fitzgerald differ in several ways from the facts in the case at hand. The parties in Fitzgerald did not have a shared parenting plan, rather the parties agreed that Patrick Fitzgerald would have greater visitation rights than those granted in the custody order. As a result of his increased visitation, Patrick sought a reduction in his child support obligation. Patrick's argument, in part, was that the trial court erred in requiring him to pay the full amount of child support provided by the guidelines when he spent a substantial amount of time with the minor children and undertook the responsibility to provide for them during such time. The court stated that such an allocation may "have the ironic consequence of actually diminishing their [the children's] standard of living almost half the time" due to the requirement that Patrick pay full child support and additionally bear half the burden in caring for the children for the time the children resided with him. Fitzgerald, supra at *9. In addition, the court held the child support obligation unjust because it had the effect of increasing Cynthia Fitzgerald's gross income to $30,000, while reducing Patrick's to about $15,000 when the parties actually earned $23,800 and $24,148, respectively.
 {¶ 20} The situation in the case sub judice can be distinguished from the Fitzgerald case. The Supreme Court has held that one is not automatically entitled to credit for the time a child resides with him or her. Pauly, supra.
The question whether to give a credit is within the sound discretion of the trial court. Id. There is no authority "whatsoever `for requiring a trial court to deviate from the child support guidelines merely because a deviation would be permissible or even desirable.'" Jones v. Jones (Dec. 17, 1999), Ohio App.4th Dist. No. 99CA9, 1999 WL 1254809, *5; citingFitzgerald, surpa. The trial court in this case ordered child support payments by Kristen to Richard in an amount that had the effect of equalizing the income between the parties. The trial court found that this was in the best interests of the child. Since the evidence supports the trial court's findings, the trial court did not abuse its discretion. Therefore, the second and third assignments of error are overruled.
 Fourth Assignment of Error {¶ 21} In her fourth assignment of error, Kristen argues that $6,000 should be imputed to Richard's income because he chose to accept a job that was in his academic major and take a pay cut rather than continue working at a job that was not in his field and that he did not enjoy, all for the pay of $6,000 more. Kristen contends that the difference in pay between the jobs in the amount of $6,000 should be imputed to Richard's income for the purpose of computing child support. We disagree.
 {¶ 22} The Ohio Revised Code does permit the court to impute income in cases where an obligor is voluntarily unemployed or underemployed. R.C. 3119.01(C)(5)(b). It is not a per se abuse of discretion for a court to impute "potential" income to an obligor for purposes of computing child support obligations. In re Yeauger (1992),83 Ohio App.3d 493, 615 N.E.2d 289. However, a determination must be made that the obligor is voluntarily unemployed or underemployed before the court can impute income.
[T]he question whether a parent is voluntarily (i.e. intentionally)unemployed or voluntarily underemployed is a question of fact for thetrial court. Absent an abuse of discretion, that factual determinationwill not be disturbed on appeal.
 Rock v. Cabral (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218. A voluntary reduction in income is not sufficient in and of itself to establish that income should be imputed. Woloch v. Foster (1994),98 Ohio App.3d 806, 649 N.E.2d 918. The test is not only whether the change was voluntary, but also whether it was made with due regard to one's income-producing abilities and the duty to provide for the continuing needs of the child concerned. Id.
 {¶ 23} In Kellogg v. Current (June 5, 2002), Marion App. No. 9-02-08, 2002 WL 1299875, we held that Current was not voluntarily underemployed although she took a lesser paying job and worked fewer hours. It was determined that Current took a lower paying job so she could go to college and earn a degree which would permit her to support the child better in the future. In the case sub judice, the trial court determined that Richard was not voluntarily underemployed and refused to impute $6,000 to his income. Although Richard did take a job that paid $6,000 less per year than what he had made at his previous job, Richard took the new job because it was in the field of his academic major and gave him advancement opportunities for the future which would permit him to better provide for his child. Kristen even asserts that there was sufficient testimony that Richard chose his job, not for the sake of money, but rather for the sake of advancing his career. A temporary reduction in salary for the purpose of advancing one's career does not constitute voluntary underemployment. In addition, Richard's current salary is guaranteed income, whereas the earnings from his previous job in excavating were dependent upon the availability of work and favorable weather conditions. Furthermore, Richard started his new job at American Jersey Cattle Association while the parties were still married and living together and no evidence was presented to show Richard was attempting to avert his child support obligations by taking a lower paying job. Since there is sufficient evidence to support the trial court's ruling, we cannot find that it abused its discretion. The fourth assignment of error is overruled.
 Fifth Assignment of Error {¶ 24} In her fifth assignment of error, Kristen argues that the trial court failed to consider the premarital nature of a tennis bracelet when ordering the insurance proceeds from the bracelet to be split between the parties. Kristen asserts that this decision is arbitrary and contrary to law. We disagree.
 {¶ 25} Marital and separate property are defined in R.C. 3105.17.1. Marital property includes, but is not limited to, all real and personal property and interest currently owned by either or both spouses, all income and appreciation on separate property, due to labor, monetary or in-kind contribution of either or both spouses during the marriage and deferred moneys during the marriage. R.C. 3105.17.1(A)(3)(a)(i)-(iv). Separate property includes all real and personal property and interest in the property that was acquired by one spouse prior to the date of marriage. R.C. 3105.17.1(A)(6)(a)(ii).
 {¶ 26} As a general matter, we review the overall appropriateness of the trial court's property division pursuant to divorce proceedings under the standard of abuse of discretion. Cherry v. Cherry (1981),66 Ohio St.2d 348, 421 N.E.2d 1293. "[T]he characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and that the characterization must be supported by sufficient, credible evidence." Kelly v. Kelly (1996), 111 Ohio App.3d 641,642, 676 N.E.2d 1210.
 {¶ 27} The record in this case shows that Kristen owned a wedding ring and tennis bracelet that she has not seen since May, 2002. Kristen asked for Richard to make a claim to the insurance company for the lost jewelry. Kristen argues that the jewelry should be considered premarital in nature and that the proceeds from the insurance should be given to her solely. There is an insurance policy on the jewelry that, at the time of the hearing, had been transferred to Richard from his parents and in which Richard had control. Kristen testified, as follows, on direct examination at the hearing indicating that proceeds from the jewelry should be equally divided between the parties:
Q: And are you merely asking that this ring and this tennis bracelet be submitted for insurance for recovery?
A: Yes, I am.
Q: And then with the proceeds of whatever it would be you do acknowledge would probably be divided between the two of you?
A: Yes, I do.
Tr. 20.
 {¶ 28} Even though the tennis bracelet and wedding ring were pre-marital property and would ordinarily be considered separate property by the court in distributing assets pursuant to a divorce, the insurance proceeds from the property is not necessarily separate property as well. We are not dealing with the actual jewelry in this case, but rather the insurance proceeds from the claim made to the insurance company for the lost or misplaced jewelry. In this case, the change in the state of the property from the actual jewelry to the insurance proceeds for the lost jewelry changes the classification of the property from separate to marital. The change in the classification of the property is due to the fact that the insurance on the jewelry was paid from marital funds, and prior to being paid from marital funds it was paid by Richard's parents, on a policy that included coverage for other marital assets. Since marital funds insured the jewelry, any claim made for the lost jewelry must be considered marital property as well.
 {¶ 29} We hold that the trial court did not abuse its discretion in classifying the insurance proceeds from the claim for the lost jewelry as marital property. Therefore, the fifth assignment of error is overruled.
 {¶ 30} The judgment of the Court of Common Pleas of Union County is affirmed.
Judgment affirmed.
SHAW and CUPP, JJ., concur.